The opinion of the court was delivered by
Valentine, J.:
This case is in some respects very much like the case of The State v. Pawnee County, just decided; (supra, pp. 426, 437.) It is an original proceeding in this court in the nature of quo warranto.' The questions involved in this case, as in the Pawnee county case, are raised on petition, answer, and demurrer to the answer. We shall discuss only such of the questions involved in this case as differ from those discussed in the Pawnee county case, and such only as are necessary to be considered in the decision of this case. The plaintiff has made the county of Ford, in its organized, corporate capacity, a party defendant, thereby substantially admitting that such county has an actual corporate existence, and then asks that we shall decide that such county never had any legal corporate existence. Whether this is correct pleading, we shall not now stop to decide, as the plaintiff has also made the acting county commissioners, in their individual capacity, and also the county clerk, in his individual capacity, parties defendant. Hence, if we should hold that the plaintiff had made a mistake in making the county in its organized corporate capacity a party defendant, we should allow the plaintiff to amend its petition by striking out the name of the county as a party.
The boundaries of Ford county have been regularly established by law. (Gen. Stat., 235, § 25.) And an attempt has been made to organize the county under the general laws of Kansas. (Gen. Stat., 249; Laws of 1872, p. 243.) And while *445 the records of the organization would seem to be regular and valid upon their face, yet the pleadings show that said organization was obtained by means of falsehood and fraud. The memorial for the organization was not in fact signed by forty householders" and legal electors, as the law requires. Neither were there ever six hundred bona fide inhabitants of said county, as the law requires there should be whenever a new county is organized. The governor was therefore deceived by the false memorial, and false census returns. The proceedings to organize said county were commenced in October, 1872, but were not completed .until April 5th, 1873, when the governor appointed three county commissioners, a county clerk, and designated a place for the county-seat, and duly declared the county to be organized.
i. counties fraudulently organized. The first question to be determined is, whether said organization is valid notwithstanding said falsehoods and fraud, We think it is not valid. As we have already t stated m. the pawnee county case, the legislature has absolute power over the organization of new counties. They have as absolute power over the organization of new counties as they have over the organization of townships, school districts, or road districts. They may exercise the power directly themselves, or they may put it into the hands of the governor, or any other officer, or agent. The power is legislative when they exercise it directly themselves. They may make it ministerial, judicial, or possibly executive. Or they might make it partake of the nature of all. They might pass an act for the organization of a particular county: the passage of the act would be the exercise of legislative power. The act might require certain commissioners or agents to perform certain dirties; the performance of these duties might be the exercise of ministerial power. The act might require a judicial determination upon evidence, as to when the county was organized; this would be the exercise of judicial power. And the act might then require the governor to put the new organization into operation; this would be the exercise of executive power. After a careful examination of the act *446 under which new counties are organized, we have come to the conclusion that none but ministerial power is exercised by the governor, or by any other officer in the organization of a new county. When the memorial is presented to the governor, he appoints a census-taker. The census-taker takes the census of the county, and reports to the governor. If there are six hundred or more bona fide inhabitants in the county, the governor then appoints three county commissioners, a county clerk, and designates a place for the temporary county-seat. The officers thus appointed then qualify and proceed to the discharge of their respective duties, and the county thus becomes organized, by these proceedings, and by operation of law. It requires no proclamation from the governor. And every act that he performs might constitutionally be conferred upon any other officer. Therefore the acts of the governor, and the acts of the other officers in the organization of new counties, being merely ministerial acts, must be in substantial conformity to law, or they are void, and the courts may declare them void. And therefore the proceedings in this case, in attempting to organize said county, being in violation of law, are void, and the organization is void, and the court has the right to declare it to be void. *

2. Legislative recognition.

In this case, as well as in the Pawnee county case, there was a recognition by the legislature of a county organization. In this case the recognition was by passing an act providing for terms of the district court to be held in said Ford countv. (Laws of 1873, up. 165, 166, §§ 1, 2, 7.) But as there was no attempt by the legislature to es *447 tablish or create a county organization in Ford county, and as no county organization, de facto or otherwise, was then in existence in Ford county, we cannot think that said recognition by the legislature created any county organization. The act seemingly recognizing Ford county as an organized county, was passed March 4th, 1873, and took effect two days thereafter. The legislature adjourned sine die March 7th, 1873. But Ford county never had any organization, de facto or otherwise, until April 5th, 1873. Hence, when the legislature passed said act there was no organization for the legislature to ratify, or make valid. The legislature cannot ratify a thing that never had an existence. They cannot cure a defective or irregular organization when the organization itself never in fact existed. And the seeming recognition of a thing which never had any actual existence, cannot create such a thing.
The demurrer to the answer must be sustained.
All the Justices concurring.