THE STATE OF KANSAS, *ex rel. Attorney General,* v. JOHN SILLON, J. C. SEVEY, *et al.*

PRATT COUNTY, *Exists Only as an Unorganized County.* The proceedings attending the attempt to organize the county of Pratt, as a county, in 1874, being in violation of law, are void; and, as the legislature has never ratified such attempted organization, nor recognized it, the organization is void. Pratt county exists only as an unorganized county. (*State v. Ford County,* 12 Kas. 441.)

*Original Proceedings in Quo Warranto.*

ON the 17th of October, 1878, Willard Davis, attorney general, as relator, brought an action in this court in the name of the *State of Kansas,* plaintiff, against *John Sillon, J. C. Sevey,* and *James Neelands,* acting county commissioners within and for the county of Pratt, in the state of Kansas, and *Cyrus W. Clark,* acting sheriff of said county, and *W. R. Edgar,* acting probate judge of said county, defendants, to inquire by what warrant or authority the above-named officers exercise the powers and discharge the duties of the offices by them respectively occupied and claimed as aforesaid. On the 30th of October, 1878, the case was duly submitted on the pleadings and evidence therein, and on the 26th of November, 1878, the opinion was filed. All necessary facts appear in the opinion, *infra.*

*Willard Davis,* attorney general, for The State:

The only question for the court to determine is this: Was Pratt county duly, properly and legally organized? Defendants admit that if it were falsely and fraudulently organized, and the pretended organization is held to be void, that the legislature—which plaintiff and defendants all admit has sole control over the organization of new counties—has not, subsequently passed any law or resolution, or performed any act, which would have the effect to legalize or make valid said fraudulent organization.

The subject of fraudulently-organized counties has been

considered by this court in *The State v. Comm'rs Pawnee County*, 12 Kas. 426, and, *The State v. Comm'rs Ford County*, 12 Kas. 441. The facts in this and the Ford county case are very similar. Both counties were fraudulently organized, and both are mentioned in the same connection and in the same act which it was claimed validated the organization of Ford county; the only difference being, that, by the act, courts were established in Ford county, and to be established in Pratt "as soon as the same shall be organized." (Sec. 2, ch. 79, Laws of 1873.)

It was more than a year after the passage of this act to the date of the pretended organization of Pratt county. The principles laid down in the Ford county case, I think, undoubtedly dispose of this case, and in the same manner.

*G. C. West*, and *W. R. Edgar*, for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This is an original action in the nature of *quo warranto*, instituted by the attorney general against the defendants, who were appointed to the offices of county commissioners, sheriff and probate judge of Pratt county, by the governor, on the 10th day of October, 1878, to require them to show by what authority they severally hold and exercise the duties and functions of their several offices. The question to be determined is, whether the county of Pratt has a valid organization as a county. The history of this county, together with the legislative mention thereof, is as follows: It was christened and its limits defined originally by § 24, ch. 33, laws of 1867. Its boundaries were subsequently changed, and now exist by virtue of § 2, ch. 61, laws of 1875. It was originally attached to Marion county for judicial purposes (Gen. Stat., § 9, ch. 28), and was afterward annexed to Ellsworth county for like purposes (§ 8, ch. 36, Laws of 1869). By § 2, ch. 79, laws of 1873, it was provided that courts were to be established in the counties of Hodgeman, Kingman, Harper, . . . *Pratt* and Stafford, as soon as

the same were organized; and by § 4 of this act, Pratt county, until organized, was to be attached to the county of Reno for judicial purposes. On March 14, 1874, Governor Osborn, assuming that the census authorized to be taken in the county was correctly and truly returned, and that there were in such county at least 600 *bona fide* inhabitants, appointed county commissioners and a county clerk for the new county, and also selected and designated Prattville as the temporary county seat. These proceedings were had apparently in compliance with § 1, ch. 106, laws of 1872. When the legislature convened in 1875, one J. M. Moore presented himself to the house of representatives, demanding a seat and claiming to have been elected to represent Pratt county. This matter was referred to the committee on elections in the house, and the committee afterward reported that the county was not entitled to representation, and the seat was declared vacant. (House Journal 1875, pp. 145, 280.)

By § 3, ch. 61, laws of 1875, this county was attached to Pawnee county for judicial purposes, but the validity of this section is very questionable, as the subject thereof is nowhere referred to in the title of the act, which purports to define the boundaries of Barton and Pratt counties. By § 1, ch. 159, laws 1877, section lines were made public highways in Pratt county.

From an examination of the legislative record of this county, it will be clearly perceived, that at no time has the legislature ever recognized the organization of that county as valid or binding, nor has it ratified or made valid the attempted effort at such organization. If the county has a valid organization as a county, it must exist under the proceedings instituted under said ch. 106, laws 1872. This leads us to the question, Were these proceedings in conformity to law? The defendants confess that the memorial was not signed by forty *bona fide* householders of Pratt county, and that there were not twenty inhabitants in the county before or at the time the census was taken or returned.

From the case, it plainly appears that the whole scheme to
14—21 KAS.

organize the county in 1874 was fraudulent; that the governor was deceived by a false memorial and false census return. Fraud and falsehood poison the proceedings throughout, and notwithstanding the regularity of the records, within the authority of *The State v. Ford County*, 12 Kas. 441, all of these proceedings, being in violation of law, are void, and the pretended organization is consequently void.

The demurrer to the answer is sustained, and a judgment of ouster, with costs, will be rendered against the defendants.

All the Justices concurring.