STATE *ex rel.* STANDEVEN *et al.* v. ARMSTRONG *et a¹.*

No. 2026.    Opinion Filed January 10, 1911.

INJUNCTION—Original Jurisdiction of Supreme Court—Restraint of De Facto County Officers. Where the object of the petition in an original proceeding in this court is to secure an ancillary injunction to restrain defendants, claiming to be the officers of S. county, newly created out of parts of K. and C. counties by virtue of an election held pursuant to art. 4, sec. 17, of the Constitution and an act approved April 24, 1908 (p. 274, Session Laws of Oklahoma, 1907-8), providing for the creation of new counties and the election of officers therefor, said county being later proclaimed by the Governor as created and existing—from demanding or receiving from the officers of K. county any of the books, records, tax rolls or transcripts thereof, or any moneys or properties of K. county, claimed by them to be the property of S. county, pending certain quo warranto proceedings against them in the district courts of K. and C. counties to test the validity of the organization of S. county and their election on the grounds of fraud and illegality (specifically set forth)—held, that, assuming this court to be vested with original jurisdiction to issue the writ in virtue of an act approved April 10, 1908 (Session Laws of Oklahoma, 1907-8, p. 208), it appearing from the facts set forth in the petition that the evidence of said organization was fair on its face and the Governor was without

notice of the fraud and illegality charged, at the time of his proclamation, defendants are **de facto** officers of the **de facto** county of S., and, as the acts sought to be enjoined are part of their official duties, a demurrer to the petition is sustained.

(Syllabus by the Court.)

*Original Proceeding of Ancillary Injunction.*

Action by the State, on the relation of H. L. Standeven, County Attorney, and the Commissioners of Kiowa County against J. E. Armstrong, C. E. Bull and J. W. Wilcox, County Commissioners, and others. Dismissed.

*H. L. Standeven,* County Attorney of Kiowa County, and *J. A. Fain,* County Attorney of Comanche County, for plaintiffs.

*E. V. Rakestraw, Giddings & Giddings* and *Moss, Turner & McInnis,* for defendants.

TURNER, J. This is an original proceeding commenced in this court September 30, 1910, on behalf of the state of Oklahoma by H. L. Standeven, county attorney, relator, and the board of county commissioners of Kiowa county, against J. E. Armstrong, C. E. Bull and J. W. Wilcox, claiming to hold the office of county commissioners, and the other defendants, claiming to be the remaining officers of Swanson county (said county being newly created out of parts of Kiowa and Comanche counties pursuant to art. 4, sec. 17, of the Constitution and art. 1, sec. 1, Session Laws of Oklahoma, 1907-8), to enjoin said officers, their agents and servants, from demanding or receiving from the officers of Kiowa county any of the books, records, tax rolls or transcript thereof, or any moneys or properties of Kiowa county, claimed by them to be the property of said Swanson county, pending the determination of an original action in *quo warranto,* brought against them by the state on relation of said Standeven, county attorney of Kiowa county, in the district court for the Seventeenth judicial district of the state in Kiowa county, on September 28, 1910, and pending a similar action brought against them by the state on relation of J. A. Fain, county attorney of Comanche county, in the district court for the Sixteenth judicial district in Comanche

county, on September 20, 1910, in which said actions it is alleged, in effect, among other things, that the creation of said county was void for fraud and illegality in the organization thereof (setting forth the same specifically), as was also the election held May 20, 1910, pursuant to the proclamation of the Governor, by virtue of which they claim to hold their respective offices, of all of which the Governor was without notice when, on August 12, 1910, he issued his proclamation proclaiming the creation and existence of the said county of Swanson and named Mountain Park as the county seat thereof.

After the temporary writ had run, defendants appeared and demurred to the petition. In support of our jurisdiction to entertain this proceeding, plaintiffs cite article 2, chap. 26, p. 280, Session Laws 1907-8, which reads:

"Section 1. Original and exclusive jurisdiction is hereby conferred upon the Supreme Court to hear and determine any action that may be brought for the purpose of equitably dividing and distributing the property, assets and liabilities derived through the process of taxation, bonds, warrants or other evidences of indebtedness, of any county formerly existing in the territory of Oklahoma, between such county and any new county or counties created in whole or in part of the territory of such county, and for the purpose of rendering and enforcing complete justice in any such action, the Supreme Court shall have the power to make and render all necessary orders, judgments and decrees, and to issue and enforce all necessary process, mesne and final. Provided, that the Supreme Court shall have exclusive original jurisdiction of all actions involving the custody of, or the right to transcribe, the tax rolls or other records of any such county or counties, and the ownership and distribution of the taxes assessed and collectable therein; and provided further, that, for the purpose of hearing and receiving evidence and reporting findings of law and fact, the Supreme Court may appoint a special master in chancery in such case."

In support of their demurrer, defendants contend, in effect, that they are *de facto* officers of the *de facto* county of Swanson, and as such have a vested right to discharge the duties of their respective offices until ousted therefrom, if at all, by said proceed-

ings pending; that the acts sought to be restrained are among those duties (which is not seriously controverted), and for that reason injunction will not lie and this order should be dissolved.

Assuming, but not deciding, that, under the provisions of the act cited, we have original jurisdiction to issue this ancillary writ, the point is well taken. Without stopping to define the duties of the respective defendants, Wilson's Statutes of Oklahoma (1903) provides, in effect, that every county commissioner who shall violate any provision of law or fail to perform any duty required of him by law shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $50 nor more than $1,000, or imprisoned in the county jail for a certain time, or both fined and imprisoned.

Article 1, chapter 74, p. 653, Session Laws of Oklahoma, 1907-8, provides:

"Section 1.   That the board of county commissioners of any county or counties, created in whole or in part of any county or counties of the territory of Oklahoma, or to which territory taken from any other county may have been attached, are hereby authorized and empowered to demand and secure the original tax rolls, or a duly authenticated copy of the same, as herein provided, of all the property situated in all new counties formerly a part of the old counties, and to copy or transcribe, or to make contracts to procure copies or transcripts in substantial record books, such as are required for said instruments, the same to be furnished by said counties so transcribing or copying the same, at a rate not to exceed five cents per folio, of the records, and government field notes of any county so divided, or from which territory may have been taken, necessary to complete the records of any such county or territory so affected.   *   *   *"

"Section 2.   It is hereby made the duty of any officer or person having possession or control of any record book, paper, tax roll, assessment or any other files or matter of record, or any portion of same so required to be copied or transcribed, as contemplated by this act, to produce and exhibit all records, books, papers, tax rolls, assessments, and any other files or matter of record in his possession, custody, or control, and to permit and facilitate the copying or transcribing of any such records, book, paper, tax roll, assessment, and any other file or matter of record, or other evidence

of any record or any portion thereof, when requested by the board of county commissioners or anyone authorized by them to make such copies or transcripts."

Section 3 provides, in effect, that any person, having in his possession any of the records authorized to be copied as contemplated by this act, who shall fail, neglect, or refuse, or in any manner hinder or delay the work, after demand shall have been made for permission so to do as provided, or shall destroy, conceal or remove any such record, shall be guilty of a felony.

It was, therefore, the statutory duty of the defendant county commissioners to perform the acts sought to be enjoined; that is, if the defendants were, under the allegations of the petition, *de facto* officers of a *de facto* county. Such was Swanson county after the Governor proclaimed its creation and existence on the evidence of its organization before him fair on its face, for the reason that the same then existed as a county organization under color of law.

In *Snider Sons' Co. v. Troy*, 91 Ala. 224, a *de facto* corporation is said to exist:

" * * * when, from irregularity or defect in its organization or constitution, or from some omission to comply with the conditions precedent, a corporation *de jure* is not created, but there has been a colorable compliance with the requirements of some law under which an association might be lawfully incorporated for the purposes and powers assumed, and a user of the rights claimed to be conferred by law; or in other words, when there is an organization with color of law and an exercise of corporate rights and franchises."

*Merchants' Nat. Bank v. McKinney et al.* (S. D.) 48 N. W. 840, turned upon the question of whether Douglas county was a *de facto* organization at the time it issued certain warrants. There, as here, fraud and illegality in its organization was charged. The court in the syllabus said:

"Under and by virtue of the provisions of chapter 21, Code 1877, the Governor of the late territory of Dakota proceeded to organize the unorganized county of Douglas, by appointing three county commissioners therefor, as provided in said act, upon a petition presented to him purporting to be signed by the voters of

said county, but which contained the names of persons signed thereto without their knowledge, and when there were not to exceed 20 voters in said county. But there is not shown by the record that the Governor had any knowledge that any name upon the petition was not genuine, or that there were not the required number· of voters in said county. *Held*, that the commissioners so appointed were *de facto* commissioners, and they having appointed the other county officers of said county, the organization was, at least, a *de facto* county organization."

The holding seems to have been bottomed on *State v. Pawnee Co.*, 12 Kan. 426; *State v. Ford Co.*, 12 Kan. 441; *State v. Stevens*, 21 Kan. 210; *State v. Sillon*, 21 Kan. 207; *Comanche Co. v. Lewis*, 133 U. S. 198.

*State v. Pawnee Co., supra*, was in the nature of *quo warranto* to test the validity of the organization of said county. A demurrer to the answer was carried back to the petition, alleging fraud and illegality in said organization, and sustained. On this point the court said:

"The county of Pawnee was established in 1868. Gen. St. 243, 57. During the months of September, October and November, in the year 1872, an attempt was made to organize said county under the then existing laws of Kansas. Gen. St. 249; Laws 1872, p. 243. A *de facto* organization was effected, with a full set of county officers, and with all the paraphernalia of a legally organized county. On November 4, 1872, the Governor proclaimed that the county was fully organized. From that time up to the present it has exercised all the powers and duties of a legally organized county. On March 4, 1873, while said county had a *de facto* existence as an organized county, the Legislature recognized its organized existence.    *    *    *"

In *State v. Stevens, supra*, the court said that, although the records of organization of August 20, 1873, upon which the Governor issued his proclamation September 1, 1873, were fair on their face but were "the refuge of lies and the hiding place of falsehoods," yet a *de facto* county organization therein existed up to January 10, 1874, the date of its legislative recognition; citing in the syllabus *State v. Pawnee Co., supra; State v. Harper Co.*, 34 Kan. 304. In that case the court said:

"It is claimed, however, that the organization of Harper county in 1873 was fraudulent; but even if it was, it is still a *de facto* organization, and the Legislature of 1874 ratified and confirmed such organization. (Laws of 1874, ch. 77, 28; *The State ex rel. v. Stevens,* 21 Kan. 210)."

*County Commissioners of Comanche County v. Lewis, supra,* was a suit on some coupons attached to certain bridge and courthouse bonds. The defense was that, at the time of the issue of said bonds, there was no county organization, no corporate entity capable of contracting. On this point the court said:

"In the fall of 1873 proceedings looking to the organization of Comanche county were had, which were in form in full compliance with the requirements of section 1, above quoted. These proceedings closed, as required, with the proclamation of the Governor, and upon the face of the papers was presented a clear case of a regular and valid organization. But while these proceedings were regular on their face, the agreed statement of facts shows that "said organization was effected solely for the purposes of plunder by a set of men intending to secure a *de facto* organization and issue the bonds of said county, register and sell them to distant purchasers ignorant of the facts and enrich the schemers, while plundering the future inhabitants and taxpayers of the county; and upon the consummation of said scheme, in the spring or early summer of 1874, all of said schemers, together with those who were the *de facto* officers of the said county, left said county and never returned, and said county remained with said organization totally abandoned until in February, 1885, when said county was, upon memorial presented and census taken, organized as in cases of unorganized counties."

—And held on those facts that a *de facto* organization existed, upon which legislative recognition might act, and, as such recognition came in the shape of an act of March 9, 1874, the day before the bonds were signed, that the county was liable.

And so it may be stated generally, as was said by the court in *State v. Bailey,* 106 Minn. 138:

"A municipal corporation, although not legally organized, is still a *de facto* corporation: *State v. District Court of Ramsey County,* 90 Minn. 118, 95 N. W. 591; *St. Paul Gas Light Co. v. Village of Sandstone,* 142 Minn. 225, 75 N. W. 1050; 1 Dillon on

Municipal Corporations, 4th Ed., 43; Cooley's Constitutional Limitations, 7th Ed., 363; 20 Am. & Eng. Ency. of Law, 2d Ed., 1135; *Speer v. Board of Co. Com'rs of Kearney County*, 88 Fed. 749, 32 C. C. A. 101; *City of Omaha v. City of South Omaha,* 31 Neb. 378, 47 N. W. 1113; *Miller v. Perris Irr. Dist.* (C. C.) 85 Fed. 693."

We are, therefore, of opinion that after the proclamation of the Governor the county of Swanson was and is a *de facto* county and will so remain until otherwise adjudged by the courts. *State ex rel. Hagon v. District Court et al.* (Neb.) 95 N. W. 591.

From what we have just decided, the existence of defendants as *de facto* officers of said *de facto* county follows, for, as was said by the court in *State v. Bailey, supra:*

"Logically, if a corporation has only a *de facto* existence, the offices created by the act or proceeding creating it can have no superior legal quality. They necessarily must be *de facto*, for there can be no *de jure* office of a municipal corporation existing only in theory, and the incumbents thereof manifestly are *de facto* officers of a *de facto* corporation."

To the same effect, see *Merchants' Nat. Bank v. McKinney, supra*, and authorities there cited.

Have, then, defendants, as officers *de facto* of Swanson county, a vested right to discharge the duties of their offices, until ousted, to the extent that they cannot be interfered with in so doing by injunction? We think so.

*Hull, Petitioner, v. Superior Court of Shasta Co.,* 63 Cal. 174, was certiorari to review the proceedings of that court wherein on a petition of Hopping, as sheriff and *ex officio* tax collector of that county, the newly elected incumbent, the court had ordered said Hull and another to turn over to him the books and papers belonging to that office. Speaking of an objection to his bond and his consequent right to said property, the court said:

"*Prima facie*, however, the bonds under which he qualified were sufficient. Being sufficient, his right to the office and its incidents was unquestionable. But even if the bonds were insufficient, that circumstance would merely affect his right to the office; it would not touch the question of his incumbency. Being the actual

incumbent of the office, he was. in possession under color of right; he was at least a *de facto* officer, and had a vested right to act as such until his right was questioned by some one in a proper proceeding for that purpose."

If the right to the books and papers in that case was vested in the *de facto* officers, *a fortiori* it must be here where, as we have pointed out, such severe penalties are imposed on a failure to pursue, or on a withholding of, that right.

But speaking still more directly to the point, Mr. Justice Dillon, in *Cochran et al. v. McCleary, Mayor,* 22 Iowa, 75, said:

"Unless the law is altered by our statute, it is perfectly well settled that questions of this character cannot be tried and decided in any collateral or indirect proceeding, as, for example, by a bill to enjoin. And the Court of Chancery goes so far as to hold that it will not interfere before a trial at law, in favor even of an officer *de jure* against an illegal claimant, by enjoining the latter from exercising the functions of the office. Upon this subject the authorities speak a uniform language. *Tappan v. Gray,* 7 Hill (N. Y.) 259, affirming S. C., 9 Paige Ch., 507; *Markle v. Wright,* 13 Ind. 548; *Hullman v. Noncomp,* 5 Ohio, 238; *People v. Cook,* 4 Seld., 67, affirming S. C., 14 Barb. 257; *Lans v. Oliver,* 4 Abb. Pr. 121; *Mayor v. Conner,* 5 Ind. 171; *Id.,* 73; *Mosley v. Alston,* 1 Phillips, 790; *Foss v. Harbottle,* 2 Hare, 492; *Peabody v. Flint,* 6 Allen (Mass.) 52; *Lord v. The Governor, etc.,* 2 Phill. 740; *Hagner v. Heyberger,* 7 Watts & Serg., 104; *People v. Carpenter,* 24 N. Y. 86; *People v. Draper,* 15 *Id.* 532; *Mickles v. Rochester City Bank,* 11 Paige, 118;    *    *    *"

And this for reasons, as we take it, of public policy, as an exercise of such power by the courts might block the due administration of public affairs.

*Ford v. Farmer et al.,* 9 Hump. 152, was a bill in chancery by a resident of that part of Hancock county taken from Hawkins county against the commissioners appointed by act of the Legislature to organize Hancock county. The object of the bill was to prevent the organization, and it prayed that said commissioners be enjoined from proceeding further to organize the same, and that the sheriff, clerk, and other officers elected therein be enjoined from the execution of their respective functions. The answer to

the bill set up, among other defenses, in effect, that prior to the filing of the bill said county had already been organized by said commissioners; that their functions were at an end; that a full complement of officers had been elected therein and the county machinery put in operation. There was a decree for plaintiff, in effect, that, for certain reasons, said county was unconstitutionally established, and defendants perpetually "enjoined from the organization of the county," and the same declared to be "unconstitutional and void." On appeal the Supreme Court held not so, but that said county had already been organized when assailed by the bill; that after such organization a court of chancery had no power to abolish it or restrain its officers from executing their several functions—and reversed the decree of the chancellor and dismissed the bill.

*State v. Durkee,* 12 Kan. 308, was *quo warranto* to oust *de facto* officers of Ellsworth county. The petition was entitled: "The State of Kansas, Plaintiff, against H. J. Cornell, Stillman Mann, F. A. Ham, E. W. Durkee, W. G. Eastland, Asa Kinney, J. M. Dunlap, George A. Landis, F. P. Arbuckle, and B. Pratt, Defendants." It was signed P. T. Pendleton, county attorney of Ellsworth county, and verified by another. The suit grew out of an election for the permanent location of the county seat and the election of county officers. The petition alleged that fraudulent votes were cast, proposed to contest the election, and concluded with a prayer for an injunction as an ancillary remedy, which was issued but later dissolved, and petitoners brought error. The court said:

"Probably it would be fair to infer from the allegations of said petition that said defendants were and are the said county officers *de facto,* and that they also claim to be said officers *de jure.* This is our interpretation of the petition; and with this interpretation, the state, on the relation of the county attorney, clearly has no right to ask that the said officers *de facto* shall be restrained from the exercise of the duties and functions of their several offices pending this litigation. *People v. Draper,* 24 Barb. 265; *Hartt v. Harvey,* 32 Barb. 55; *Cochran v. McCleary,* 22 Iowa, 75;

*Markle v. Wright,* 13 Ind. 548; *Updegraff v. Crans,* 47 Pa. St. 103; Hil. Inj. 446-449. The interest of the public requires that somebody should exercise the duties and functions of the various offices pending a litigation concerning them, and no one has a better right to do so than the various officers *de facto* who claim to be officers *de jure.*"

—And affirmed the order of the court below dissolving said injunction.

We are, therefore, of opinion that plaintiffs' petition for this court's ancillary writ of injunction should be denied. It is so ordered, and said petition is dismissed.

All the Justices concur.