**GRIFFIN et al. v. THOMAS, County Supt., et al.**

No. 12399—Opinion Filed April 18, 1922.

(Syllabus.)

**1. Injunction—Quo Warranto—Remedy to Test Legality of School District Organization.**

After a municipal corporation, such as a union graded school district, has been organized, quo warranto is the proper remedy to determine the question of its legal existence or the validity of its organization, and the courts are without power to do so by injunction or to restrain existing officers from exercising their proper functions.

**2. Schools and School Districts — Legality of District Organization—De Facto Corporations—Collateral Attack.**

If there is no law authorizing de jure corporations of the character sought to be organized, or if the only law authorizing the organization of such corporations is unconstitutional, a de facto corporation cannot exist, but if corporations of the nature attempted to be organized are recognized by the general system of law of the state, or if a law remain under which such corporation might be organized, even though the specific act under which the organization proceeded is unconstitutional, such corporation would exist as a de facto corporation, and its existence or the val-

idity of its organization cannot be collaterally attacked.

### 3. Statutes—Validity—Subjects and Titles —Schools and School Districts.

Chapter 252, Session Laws 1917, entitled: "An Act amending section 1 of chapter 187 of the Session Laws of Oklahoma, 1915, relating to the formation of union graded school districts, and providing for certain consolidated schools to participate in money appropriated by the Legislature, and prescribing requirements therefor, and declaring an emergency," relates primarily to only one general subject, namely, public schools of the state. and is not within the inhibition of section 57, article 5 of the Constitution.

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action of George S. Griffin, J. J. Rainbolt, D. H. Garst, and N. C. Pitzer against Grover Thomas, Superintendent of Public Instruction of Washita County, Oklahoma, and others for injunction. Judgment for defendants, and plaintiffs appeal. Affirmed.

Massingale & Duff, for plaintiffs in error.

Ash & Jones, for defendants in error.

NICHOLSON, J. On the 3rd day of May, 1921, the qualified electors of school districts Nos. 27 and 18 in Washita county, pursuant to petitions filed and the call of the county superintendent, held an election at the schoolhouse in district 27 to vote upon the proposition of organizing a union graded school district composed of the territory embraced within districts numbered 27 and 18, respectively, at which election a majority of the electors present voted in favor of the organization of said union graded school district. Thereupon the county superintendent declared the union graded school district formed, and at said election the defendants R. K. Gernert, Frank Jones, and W. R. Brubaker were elected members of the board of the district so formed. On the 16th day of May, 1921, the plaintiffs in error, as electors and taxpayers of district 27, instituted this suit seeking to enjoin the defendants, who are county superintendent and members of the school board of such district, from doing any act or performing any duty or service of any kind in recognition of said union graded school district. and from in any manner interfering with the property of said districts 27 and 18 or of the schools to be maintained therein. That part of the petition which it is necessary to consider reads as follows:

"That defendant, Grover Thomas, is and has been at all times herein referred to, the duly appointed, qualified and acting superintendent of public instruction within and for Washita county, Okla., and for cause of action against the said defendants, these plaintiffs state: That on or about the 19th day of April, 1921, a petition was circulated in school district No. 27 petitioning the county superintendent to call a meeting in said district for the purpose of voting on the proposition of uniting said district with school district No. 18, and forming therewith a union graded school district, and on or about the same date a petition was circulated in district No. 18 petitioning the county superintendent to call an election in the territory embraced within said school districts, 27 and 18, for the purpose of having the electors of said two districts vote on the proposition of disorganizing and dissolving said two school districts and forming a union graded school district; and pursuant to said petitions the county superintendent called an election at the schoolhouse in district 27, on the 3rd day of May, 1921, at which time and place the patrons of said two districts voted on the proposition and the county superintendent canvassed the votes and declared a majority thereof voted in favor of the proposition and made an order purporting to dissolve districts 27 and 18 and declaring that the new district had been formed by reason of the foregoing, the same to be a corporate body known as a union graded school district, and at the said election R. K. Gernert was elected chairman of the pretended board of said union graded school district, Frank Jones was elected clerk thereof, and W. R. Brubaker member, said parties being three of the defendants herein.

"1. That defendant Grover Thomas, county superintendent as aforesaid, and R. K. Gernert, Frank Jones, and W. R. Brubaker, acting as a pretended board in and for said pretended union graded school district, are now giving recognition to said district as a corporate entity and are preparing to make an estimate and to cause a tax to be levied upon all the property in said pretended union graded school district for the purpose of organizing a high school therein and are about to, and will, unless restrained by this court, suspend and set aside the schools heretofore held and which ought to be held under the law, in districts 27 and 18. and will disorganize said schools and teach nothing in said districts above the 6th grade, whereas each of said districts have heretofore maintained efficient country schools, teaching the usual branches up to and including several grades above the 6th grade.

"2. That at the election held on the 3rd day of May, 1921, aforesaid, the electors

participating in said meeting located the high school to be erected in said supposed graded school district, in the town of Cloud Chief within the territory formerly comprising district 18.

"3. That plaintiff George S. Griffin resides five and one-half miles from the proposed location of said high school and has children of school age who are entitled to an education; that plaintiff J. J. Rainbolt resides five miles from said proposed location of said high school and has children both below and above the 6th grade; that plaintiff D. H. Garst resides five and one-half miles from the location of said proposed high school and has children of school age, and plaintiff N. C. Pitzer resides seven miles from the proposed location of said high school and has children of school age.

"4. That section 1, article 13, of the Constitution of Oklahoma, provides that the Legislature shall establish and maintain a system of free public schools wherein all the children of the state may be educated, and under said section of the Constitution each and every resident of the state of Oklahoma is entitled to proper and adequate facilities for the education of his children and said provision is a guarantee to that effect, and, notwithstanding said provision, the Legislature of Oklahoma enacted a law known as Senate Bill No. 150 of the Session Laws of 1917, and entitled: 'An act amending section 1 of chapter 187 of the Session Laws of Oklahoma, 1915, relating to the formation of union graded school districts and providing for certain consolidated schools to participate in money appropriated by the Legislature and prescribing requirements therefor and declaring an emergency.' And said law purports to make provision for uniting two or more school districts into one district and forming therefrom what is known as a union graded school, at the same time dissolving the former districts, and these plaintiffs allege that said law is void and unconstitutional and in violation of the aforesaid section of the Constitution of the state of Oklahoma in that it fails to provide for the maintenance of a system of free public schools wherein all the children of the state may be educated; that these plaintiffs and many others residing in school district No. 27 reside at such distance from the proposed location of said high school that it is impossible for their children to attend said high school; that said law does not provide for transportation and the children are required to walk to and from said high school at distances as great as seven miles over almost impossible roads, or furnish their own private conveyance at a very extraordinary expense, which is absolutely prohibitive and the legal effect of said law, if held to be valid and constitutional, is to

destroy districts 27 and 18 and deprive many of the children of school age in said districts of the right to obtain an education above the 6th grade, and these plaintiffs further state that the burden cast upon them and other patrons of said district by having to furnish transportation at their own private expense to convey their children below the 7th grade to one school and those above the 6th grade to another and different school, far distant from the residence of said patrons, is intolerable and said law cannot be permitted to stand in view of the Constitution guaranteeing to the people of the state of Oklahoma a system of free public schools wherein all the children may be educated.

"5. That the organization of said pretended union graded school district was brought about and effected under said void law and that plaintiffs have no adequate remedy at law.

"6. Said law further violates section 7 of the Bill of Rights of the state of Oklahoma, which provides that no person shall be deprived of life, liberty, or property without due process of law, and in this connection these plaintiffs state that the proposed organization depreciates the value of their property, increases their taxes and would take away from them a large sum of money annually by way of necessary expenses for private transportation for their children in attendance at the proposed high school, all of which money and property is taken from them without due process of law.

"7 Petitioners state that the said Senate Bill No. 150 of the Session Laws of Oklahoma for the year 1917 is further violative of section 7 of the Bill of Rights of the Constitution of the state of Oklahoma, in the respect that under the laws of this state the power of building schoolhouses, selecting sites therefor, voting taxes to maintain schools therein, purchasing sites for schoolhouses, keeping buildings in repair, and otherwise handling and being responsible for the property of said district No. 27, was vested in the inhabitants of the said school district No. 27 and the right to divest the inhabitants of said school No. 27 of their property rights in said school building and in the school to be conducted therein is by said Senate Bill taken from the inhabitants of said district No. 27 and committed to a majority of the voters of both school districts Nos. 27 and 18 and, by reason of such provision, the Senate Bill No. 150 is violative of said section 7 of the Bill of Rights of the Constitution of the state of Oklahoma, and is, therefore, unconstitutional; and, by the operation of the said Senate Bill No. 150, the property rights of the inhabitants of said school district No. 27 were determined, not by a majority of the inhabitants or voters of said district No. 27, but were

influenced and determined partly by the inhabitants of district No. 18.

"8. Petitioners further state that at the said election practically every qualified voter in said school district No. 27 participated in said election and voted against the proposition of the said union graded school, with the exception of four voters in said district No. 27, who voted for the proposition, and that all except four of the votes which constituted the majority vote in said election were cast by the inhabitants and voters of said school district No. 18, and the property rights of the inhabitants of said district No. 27 will be determined by the voters of said district No. 18 instead of by the voters of district No. 27 if said Senate Bill No. 150 is held to be valid, and thereby fundamental rights of the inhabitants of district No. 27 will be lost and taken away without due process of law.

"9. That district No. 18 exceeds in population and in legal voters district No. 27 by more than two to one, and that by reason of the provisions in said Senate Bill No. 150 permitting a majority vote of two districts to determine the dissolution of each district, district No. 27 will be dissolved by the voters of district No. 18 contrary to the spirit of the Constitution and in violation of the general school plan of the state of Oklahoma.

"10. In view of the fact that the meeting held on the 3rd day of May, 1921, and all of the acts and things done by defendant Grover Thomas, county superintendent, and by the patrons of said district in their attempt to abolish districts 27 and 18, are void and unconstitutional, the said pretended board of the new district is acting without authority of law and unless they are restrained by this court they will commit numerous void and unconstitutional acts and will interfere with the conduct of the public schools in said two districts which they are now threatening to and are about to do.

"11. The said Senate Bill No. 150 of the Session Laws of the Oklahoma Legislature for 1917, is void for the further reason that it is in violation of section 57 of article 5 of the Constitution of Oklahoma, the said law being duplicitous both in the title and in the body of the bill in violation of said section of the Constitution, and since less than a majority of the votes cast by the qualified voters of school district No. 27 in favor of the union graded school district the result of said election is a nullity and said pretended union graded school district has no legal nor constitutional existence."

To this petition the defendants interposed a demurrer upon two grounds: First, that said petition did not state facts sufficient to constitute a cause of action; and,

second, that the plaintiffs have no legal capacity to sue. This demurrer was sustained; the plaintiffs elected to stand on their petition, whereupon the court rendered judgment for the defendants, to review which this proceeding in error is prosecuted.

Two questions are presented: First, can the legal existence or the validity of the organization of the school district be questioned in an injunction suit, or can such validity or existence be challenged only by proceedings in the nature of quo warranto? And, second, is chapter 252, Session Laws 1917, invalid because it is repugnant to section 57, article 5, of the Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length; Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

It appears from the allegations of the petition that the organization of the union graded school district and the dissolution of districts Nos. 27 and 18 had been effected by proper proceedings under the law as it existed, so the first inquiry is: Can the plaintiffs question the legal existence or the validity of the organization of the union graded school district by injunction?

It has been repeatedly held by this court that after a municipal corporation has been organized, quo warranto is the proper remedy to determine the question of its legal existence or the validity of its organization, and the courts are without power to do so by injunction, or to restrain existing officers from exercising their proper function. Earlboro Tp. et al. v. Howard, 47 Okla. 455, 149 Pac. 136; State ex rel. Standeven et al. v. Armstrong et al., 27 Okla. 810, 117, Pac. 332; Thompson v. Haskell, 24 Okla. 70, 162 Pac. 709; Fowler, Co. Supt., v. Park, 79 Okla. 1, 190 Pac. 668; and these cases are in accord with the doctrine announced in 32 Cyc. 1415 and 1424.

The plaintiffs in error contend that the rule announced applies only where there is a de jure or de facto corporation, and insist that, as the petition challenges the

constitutionality of the statute under which all of the procedure was had for the formation of a new district, if the statute should be held unconstitutional, then there is no district, either de facto or de jure, and the officers elected at the meeting would be exercising purely assumed and unwarranted authority, and would be interlopers interfering with the property rights and educational advantages of the electors of the old district, and that the corporate existence of the district may be questioned in an injunction suit.

The judicial decisions are not in harmony on this question, some holding that a municipal corporation organized under an unconstitutional statute is an absolute nullity, possessing no power whatever, while other decisions hold that an unconstitutional statute is a sufficient basis for a de facto corporation. Among the latter are Ashley v. Board of Supervisors, 60 Fed. 55; Speer v. Board of County Commissioners of Kearney County, 88 Fed. 749; State ex rel. v. Town of Dover, 62 N. J. L. 138; The Coast Co. v. Spring Lake, 56 N. J. E. 615; State v. Des Moines, 96 Iowa, 521; Back v. Carpenter, 29 Kan. 249.

An analysis of the authorities pro and con convinces us that the true rule is that where there is no law whatever authorizing de jure corporations of the character sought to be organized, or where the only law authorizing the organization of such corporations, is unconstitutional, a de facto corporation cannot exist, but if corporations of the nature attempted to be organized are recognized by the general system of law of the state, or if a law remains under which such corporation might be organized, even though the specific act under which the organization proceeded is unconstitutional, yet such corporation would exist as a de facto corporation, and its existence or the validity of its organization cannot be collaterally attacked, but its existence or the validity of its organization can only be impeached by a direct attack in proceedings in the nature of quo warranto to oust it from the exercise of corporate powers and privileges.

Measured by this rule, the district in question is a de facto district, for even if chapter 252, Session Laws 1917, be unconstitutional and void, which we do not hold, yet the organization of union graded school districts is recognized by the same general system of laws of the state; furthermore, this act is merely amendatory of section 1, chapter 187, Session Laws 1915, which pro-

vided for the formation of union graded school districts, and if the amendatory act be unconstitutional and void, it would, of course, not operate as a repeal of prior legislation on the subject, and the act of 1915 would be in force, so that there would remain a law authorizing the formation of such district, and while the procedure provided therein differs from that prescribed in chapter 252, Session Laws 1917, the chief difference being that by the 1915 act a majority of the voters of each separate district voting at an election was required to authorize the formation of a union district, while by the act of 1917 a majority of the electors of both districts voting at such election was required to authorize such formation, yet a law exists under which the district might be organized and any irregularity in the procedure leading to such organization would not render the organization void and subject to collateral attack.

We conclude that the union graded school district involved is a de facto district, and that its existence or the validity of its organization cannot be questioned by injunction, as is attempted in this case.

While the conclusion reached disposes of the case, yet we feel that in view of the questions raised and the arguments advanced pertaining to the validity of the act of the Legislature of 1917 (chapter 252, Session Laws 1917), and in order to avoid further litigation, if possible, we should pass upon the validity of this act, which it is claimed is violative of section 57, article 5, of the Constitution, in that it embraces more than one subject in its title and treats of more than one subject in its body. The title of the act reads as follows:

"An Act amending section 1, of chapter 187, of the Session Laws of Oklahoma, 1915, relating to the formation of union graded school districts, and providing for certain consolidated schools to participate in money appropriated by the Legislature, and prescribing requirements therefor, and declaring an emergency"

—and as indicated thereby, section 1 provides for the formation of union graded school districts, and section 2 reads:

"Every consolidated school district comprising not less than three school districts, in this state heretofore organized, and now existing as such, and has less than 25 square miles in area, and which has been established and conducted for a period of not less than six months under the terms of existing laws with reference to the consolidation of schools; and which has complied with the laws of this state except as to the necessary area, and has a building containing not few-

er than three rooms, suitably constructed, and a graded school employing not less than three teachers, upon making proof of compliance with the laws of the state governing the creation of consolidated schools, and which shall have been approved by the superintendent of public instruction, shall be entitled to participation in the moneys appropriated by the Legislature of this state for the aid of consolidated schools in the same manner and to the same extent as can now be done by such schools having an area of 25 square miles."

An examination of the various acts of the Legislature pertaining to schools discloses that union graded schools were first authorized by article 5, chapter 45, Session Laws 1895, and the consolidation of school districts was authorized by chapter 33, Session Laws 1905. These acts authorizing and governing the formation of union graded and consolidated school districts were carried forward and codified together as article 13, chapter 74, Revised Laws 1910, the general subject of said chapter 74 being "Schools". By chapter 112, Session Laws 1910-11, a "union graded or consolidated school district fund" was created from all the lands and funds that had heretofore been or might thereafter be derived from the sale of section 33 in Greer county, together with all lands in lieu thereof, and the proceeds of all rentals, interest, and sales accrued, or that might accrue therefrom, the same to be used only to assist in constructing or paying for school buildings. It was further provided by this act that whenever a school district of not less than 25 square miles in area should have been established and conducted for a period of not less than six months, under the terms of existing laws with reference to consolidated schools, and a building containing no fewer than three rooms suitably constructed, equipped, and furnished shall have been built, and a graded school employing not less than three teachers shall have been conducted for a term not less than six months, that said district shall be entitled to receive not to exceed $2,500 from such fund. By chapter 15, Session Laws 1913, there was appropriated out of the funds of the union or consolidated school district fund, created by chapter 112, Session Laws 1910-11, the sum of $100,000, which was placed at the disposal of the State Board of Education to be apportioned and distributed according to the provisions of chapter 112, Session Laws 1910-11, and by chapter 34 of Session Laws 1913, it was provided that all moneys thereafter received from the sale or rental of section 33, and lands granted in

lieu thereof, constituting and known as the "public building fund", in excess of the amount required for the payment of certain outstanding bonds and the interest thereon, should be transferred, set aside, and credited to the union graded or consolidated school district fund.

By chapter 219, Session Laws 1913, a general school law was enacted entitled, "An Act prescribing laws for the government of the common schools of Oklahoma; and repealing conflicting laws." Article 7 of this act re-enacted chapter 112, Session Laws 1910-11, pertaining to consolidated districts, and article 8 thereof provided for the formation of union graded school districts. By chapter 187, Session Laws 1915, sections 5 and 6, chapter 112, Session Laws 1910-11, relating to the consolidated and union graded school fund, were amended by providing that consolidated districts might receive $2,500 and union graded districts might receive not to exceed $1,250 from the appropriation therein made, and by this act section 1, article 8, chapter 219, Session Laws 1913, which provided the procedure for the formation of union graded school districts, was also amended, and said chapter 187, Session Laws 1915, was amended by chapter 252, Session Laws 1917, the act attacked herein.

The foregoing shows that the subject of union graded school districts and consolidated schools have at all times been by the Legislature treated under one general subject, that of "Schools". The subject contained in the act of 1917 has been included in the general school law of the state as contained in both Revised Laws 1910 and in the Session Laws 1913.

Section 1, article 13, of the Constitution provides:

"The Legislature shall establish and maintain a system of free public schools wherein all the children of the state may be educated."

In carrying out this mandate of the Constitution, the Legislature has from time to time passed various acts, the purposes of which have been the improvement of the school system of the state. One of these acts created a joint fund for the union graded and consolidated school districts, both of which belong to the system of free public schools required by the Constitution.

In discussing constitutional provisions such as section 57, article 5, supra, in 25 R. C. L., section 88, page 842, it is said:

"The term 'subject' as used in these provisions is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. This constitutional provision does not contain any limitation on the comprehensiveness of the subject, which may be as comprehensive as the Legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several; it may include innumerable minor subjects, provided that all the minor subjects, when combined, form only one general subject or topic."

And in section 90, page 844, Id., it is said:

"The 'subject' of an act is the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head. There can be no surer test of compliance with the constitutional requirements of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title. An act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act or when the provisions of the act are of the same nature and come legitimately under one subject."

To the same effect are Rea, County Clerk, v. State ex rel. Board of County Commissioners of Lincoln County, 29 Okla. 708, 119 Pac. 235; In re Counties Comprising 7th Judicial District, 22 Okla. 435, 98 Pac. 557; In re Menefee, State Treasurer, 22 Okla. 365, 97 Pac. 1014; State ex rel. Caldwell v. Hooker, 22 Okla. 712, 98 Pac. 964; Leedy v. Brown, 27 Okla. 487, 113 Pac. 177; Atwater v. Hassett, 27 Okla. 292, 111 Pac. 802; In re Lee, 64 Okla. 310, 168 Pac. 53; Dunlap v. Board County Commissioners of Carter County, 85 Okla. 295, 205 Pac. 1109.

It is obvious that the thing forming the groundwork of the act in question is the system of public schools of the state, and that the union graded school districts and consolidated school districts are only parts of that system properly built upon the foundation laid by the framers of the Constitution; they are germane to the general subject, and when traced back lead the mind to the subject of the public schools of the state as the generic head.

It follows that chapter 252, Session Laws 1917, is not within the inhibition of section 57, article 5, of the Constitution. The trial court did not err in sustaining the demurrer to the petition. The judgment is affirmed.

HARRISON, C. J., and PITCHFORD, KANE, JOHNSON, and ELTING, JJ., concur.