No. 19,331.

THE STATE OF KANSAS, ex rel., JOHN H. CONNAUGHTON, as County Attorney, etc., *Appellee*, v. T. C. HOLCOMB, as Mayor of the City of Zenda, etc., et al., *Appellants.*

SYLLABUS BY THE COURT.

1. CITIES—*Statute Providing for Incorporation of Cities of the Third Class—Action by County Commissioners Final and Conclusive.* The act providing for the incorporation of cities of the third class (Gen. Stat. 1909, § 1511) confers authority on the board of county commissioners to determine whether or not a petition for incorporation presented to it is signed by a majority of the electors of the unincorporated town. The authority thus conferred is jurisdiction, which attaches when a petition fair on its face and duly published is filed. Proceedings following resulting in an order effecting incorporation are the exercise of jurisdiction. The legislature having authorized no appeal or other method of review, the action of the board of county commissioners is final and conclusive although irregular and erroneous, and can not be attacked by the state in an action of *quo warranto* prosecuted against the corporation except for fraud, collusion or other misconduct the substantial equivalent of fraud.

2. SAME—*Special Legislation—Section 1 of Chapter 153 of the Laws of 1915 is Unconstitutional.* Section 1 of house bill number 139, passed by the legislature of 1915 (Laws 1915, ch. 153), purporting to cure irregularities in the incorporation of cities of the third class incorporated in the year 1913 is unconstitutional and void as special legislation conferring corporate power. (Const., art. 12, § 1.)

Appeal from Kingman district court; PRESTON B. GILLETT, judge. Opinion filed June 12, 1915. Reversed.

*Charles C. Calkin,* of Kingman, for the appellants.

*John H. Connaughton,* county attorney, for the appellee; *H. E. Walter,* of Kingman, of counsel.

*Lee Monroe, James A. McClure, C. M. Monroe, T. F. Garver, R. D. Garver,* all of Topeka, *J. H. Simminger,* and *A. D. Gilkeson,* both of Hays, as *amici curiæ.*

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one of quo warranto brought by the state to test the validity of the incorporation of the city of Zenda. A demurrer to the petition was overruled and the defendants appeal.

The statute governing the subject reads as follows:

"Whenever a petition signed by a majority of the electors of any unincorporated town or village within the state shall be presented to the board of county commissioners of the county in which such town or village is situated, setting forth the metes and bounds of their village and commons, and stating as near as may be the number of the inhabitants of such town or village, and praying that such town or village may be incorporated as a city, with satisfactory proof that such petition has been published in full in some newspaper printed in the said town or village at least once a week for three consecutive weeks, and the said board of county commissioners shall be satisfied that a majority of the taxable inhabitants of such town or village are in favor of such incorporation, and that the prayer of the petitioners is reasonable, and that the number of the inhabitants of such town or village exceeds two hundred and does not exceed two thousand, such board of county commissioners may, at any regular session thereof, by order reciting the substance of such petition and the due publication thereof, and their finding that a majority of the taxable inhabitants of such town or village are in favor of such incorporation, and that the prayer of the petitioners is reasonable and that the number of the inhabitants of such town or village is within the limits hereby required, declare such town or village incorporated as a city of the third class, by the name and style of 'The city of ———' (naming same), and designating in such order the metes and bounds thereof; and thenceforth the inhabitants within such bounds and such further territory as from time to time may be lawfully added thereto shall be a body politic and corporate by that name, and they and their successors (except such corporation be lawfully dissolved) shall have perpetual succession. The order so incorporating the said city shall order the first election in the said city for city officers, and shall designate the

place where the said election shall be held, and shall appoint three qualified electors of said city to act as judges of said election and two other electors of said city to act as clerks of said election, and also three other electors of the said city to act as a board of canvassers of such election returns; and the said order shall forthwith be entered at length upon the journal of the proceedings of the said board of county commissioners and shall be published once in some newspaper printed in said city at least one week before such city election: *Provided,* If no newspaper be published in the said town or village, then ten printed notices shall be posted conspicuously in the said town or village, in each instance where publication in newspaper is required by the provisions of this section." (Gen. Stat. 1909, § 1511.)

The petition demurred to alleged that the petition presented to the board of county commissioners was not signed by a majority of the electors of the unincorporated town and that the number of inhabitants was less than two hundred, the true figures as claimed by the state being given.

The power to incorporate cities is purely legislative in character. (*Callen v. Junction City,* 43 Kan. 627, 632, 23 Pac. 652.) This power may be conferred upon boards of county commissioners under section 21 of article 2 of the constitution, which reads as follows:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient."

In the case of *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616, the commissioner writing the opinion did what he called some "alphabetical tinkering" with this section of the constitution and said that it referred only to power over the transaction of county business. The remark was obiter, the decision of the court being correctly stated in the case of *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598:

"The first case directly involving any feature of the question was *City of Emporia v. Smith,* 42 Kan.

433 . . . but in which it was merely decided that the power given to the legislature by section 21 of article 2 of the Kansas constitution, to confer on the tribunals transacting county business powers of local legislation and administration, is not exclusive, but that such powers with reference to the change of city boundaries might be conferred on the mayor and councilmen." (p. 38.)

We have, therefore, a case in which the legislature has committed to the board of county commissioners, moved to action by the presentation of a petition, authority to ascertain the existence of certain conditions, pass upon the reasonableness of the prayer of the petition, make an order effecting incorporation, and call an election to perfect corporate organization. The action of the board in satisfying itself and finding that a majority of the taxable inhabitants favor incorporation and that the number of inhabitants exceeds two hundred, considered alone, might be said to be judicial. The finding that the prayer of the petition is reasonable is not so. The satisfaction of the board respecting that matter is the satisfaction of a legislative body. In one sense the declaration of incorporation on the basis of findings made is ministerial. But the proceeding can not be split up in this way. It is political and legislative in character, no review of the action of the board of county commissioners is provided for, and the courts have no authority to interfere unless for want of jurisdiction, fraud, misconduct, or other cause vitiating the integrity of the proceeding. The same result follows, however, if it be conceived that the board of county commissioners, exercising special ministerial functions, simply makes a finding of facts upon which the statute acts, thus expressing and executing the will of the legislature itself.

The board of county commissioners acts upon a petition presented to it signed by a majority of the electors of the unincorporated town. It is not enough that the petition state that it is signed by a majority of the

electors. It must be so signed. The board of county commissioners can not know, however, whether or not it ought to proceed until it ascertains the number of persons within the unincorporated town having the qualification of electors, and ascertains whether or not the persons signing the petition constitute a majority of such electors. A mere census of the inhabitants is not enough. The census is of electors, the making of which involves the determination of mixed questions of law and fact and affords opportunity for error and mistake. While the statute does not in express terms declare that the board of county commissioners shall determine these facts, the necessary implication is that it must do so. Having done so, its finding, evidenced by the subsequent making of the order, is the finding of the tribunal appointed by the legislature for the purpose and is not reviewable for any miscalculation or error of judgment. Indeed the petition is to be regarded more as a means of invoking action than as a condition precedent to the exercise of authority, and the legislature did not intend that when a board of county commissioners has in good faith made its investigation and reached its conclusion respecting the sufficiency of the petition, has then acted upon the petition, has made its order, and corporate organization has followed, that the exercise of corporate power shall be subject to defeat by a recount of the electorate made by a court at some subsequent time.

The result of the foregoing is that the jurisdiction of the board of county commissioners attached in fact when a petition good on its face and duly published was presented, because its authority to investigate and to decide then attached. While a petition is jurisdictional the form and sufficiency of a petition presented are not so, and all that follows, if free from fraud and the like, is the exercise of jurisdiction.

The rule governing cases of this character was well stated in the case of *The Board of Commissioners of*

*Clay Co. et al. v. Markle et al.*, 46 Ind. 96, which involved the relocation of a county seat.

"The complaint admits that a petition was filed such as the statute requires, except as to the number of petitioners; that a deed for the sites for the court house and jail was executed and given to the county board, which was sufficient to vest the title to the land in the county, if the title had been in the grantors, and that plans and specifications for the court house were prepared and accepted by the board, and that the board, after hearing evidence on the question, passed an order for the removal of the county seat. The record of the board produced by the appellees fully establishes these matters. What the appellees deny is, that the petition contained the names of fifty-five per cent of the legal voters of the county, and that the deeds did, in fact, vest a good title to the land in the county. They also deny that the board made a proper finding.

"The statute does not require that it shall be stated in the petition that the requisite number have signed it. It must contain the requisite number. The deed must be executed, conveying good title to the two sites for a court house and jail, and the two hundred and fifty dollars must be paid before the order for relocation can be made, or the new county buildings erected. The board can not decide upon the petition or the number of legal voters petitioning until it is presented, or upon the title to the land described in the deed until the conveyance to the board has been executed and delivered or offered, or whether the petitioners have deposited the sum of money required, until it has been paid or offered to the board. When, however, these things have been done, the board must ascertain and determine those questions. If the petition contains the names of fifty-five per cent of the legal voters of the county, and if the deed offered conveys a good title to the sites designated in the petition for the court house and jail, and the requisite sums of money have been deposited with the board, then the board must proceed to have the new county buildings erected and the county seat removed, and not before. The right to hear and determine these questions is jurisdiction." (p. 109.)

The rule has been applied in quo waranto cases affecting the corporate organization of cities. In the case

of *People v. Los Angeles,* 133 Cal. 338, 65 Pac. 749, the syllabus reads:

"An inferior board may determine conclusively its own jurisdiction or power, when depending, not upon allegations in a petition, but upon the existence or non-existence of matters *in pais,* to be established by evidence, by adjudicating the existence of the *facts,* upon the existence of which its jurisdiction or power depends." (Syl. ¶ 4.)

In the case of *People v. Town of Loyalton,* 147 Cal. 774, 82 Pac. 620, the opinion reads:

"It is claimed that the averment in the petition for incorporation to the effect that there were seven hundred inhabitants in the territory proposed to be incorporated was false, and that there were not exceeding three hundred and fifty inhabitants therein. It is also claimed that of the fifty-seven persons who signed said petition, thirty-two were not residing within the boundaries of such proposed incorporation. The Corporation Act requires that there must be not less than five hundred inhabitants, and that the number of inhabitants must be stated as nearly as may be in the petition, and it also requires the petition to be signed by not less than fifty electors of the county, residing within the territory proposed to be incorporated.

"By express provision, the board of supervisors is required, upon the hearing, to 'ascertain and determine how many inhabitants reside within such boundaries.' The board is further required, of course, as a prerequisite to exercising jurisdiction, to determine whether or not the petition, apparently sufficiently signed, has been in fact signed by a sufficient number of resident electors of the district. The record shows that in this matter the board of supervisors heard the petition, and expressly found that each and all of the allegations contained in the petition and affidavit annexed thereto were true. This necessarily included the finding that each of the signers of the petition was an elector of the county and resident of the proposed corporation. The board further expressly found the number of inhabitants thereof to be seven hundred. The law provides for no appeal from the decision of the board upon such questions.

"Under what appears to be the settled law of this state, the decision of the board of supervisors upon both these questions of fact must be held to be conclusive here. There was no allegation to the effect that the decision was induced by any extrinsic or collateral fraud, and in the absence of any right of appeal or review by a higher tribunal such decision could be vacated only upon grounds which would justify the vacating of a judgment rendered by a court of record." (p. 779.)

In the case of *State ex inf. v. Fleming*, 158 Mo. 558, 59 S. W. 118, the opinion reads:

"That order and finding of the county court under the circumstances made, is final and conclusive, binding alike upon this and all other courts. That court, in such inquiries, is the agent of the State, exclusively authorized and empowered to ascertain and determine those very facts, and the State, through its Attorney-General, or its prosecuting attorneys of the different counties of the State, can not question the act of the State's court agent, acting within the scope of its authority, unless fraud and collusion on the part of such agent is charged and proven, or unless fraud has been so practiced upon it, in the matter of procuring the order, that for that reason it might be treated as fraudulent. . . . The jurisdiction of the county court in this matter attached by the filing of the petition with it, signed by what purported to be a majority of the inhabitants of the district sought to be incorporated, and no mere error of judgment, on the part of that body, in the matter of computing the fact, as to the real number of the inhabitants of the incorporated district, or error of judgment on its part as to the question of law, as to who of the designated community are to be reckoned and counted as 'taxable inhabitants,' can be inquired into by this or any other court, to arrest or disturb the force of the finding and judgment, or to correct a possible error of fact or law, that court might have made in the course of its inquiry, unless illegality in the proceedings or fraud in the procurement of the order was practiced, which at the time could not reasonably have been foreseen and averted." (pp. 561, 562.)

Contrary·decisions may be found, but this court has recognized and applied the doctrine stated at length in the foregoing quotations. (*In re Wallace*, 75 Kan. 432, 89 Pac. 689; *Miller v. Miller*, 89 Kan. 151, 155, 130 Pac. 681.)

The cases of *The State, ex rel., v. Comm'rs of Ford County*, 12 Kan. 441, *The State, ex rel., v. Sillon et al.*, 21 Kan. 207, and *The State, ex rel., v. Stevens et al.*, 21 Kan. 210, cited by the plaintiff, involved fraud, falsehood, and forgery. In the case last cited the court said:

"The records purporting to show a valid organization are simply 'the refuge of lies and the hiding-place of falsehoods.'" (p. 214.)

The statute requires that the board of county commissioners shall be satisfied that the number of inhabitants of the unincorporated town exceeds two hundred and does not exceed two thousand and shall so state in its order. The determination of this fact was, therefore, expressly placed within the jurisdiction of the board of county commissioners.

In the brief for the plaintiff the question is asked, What remedy is open to the state of Kansas to test the validity of the incorporation of the city of Zenda? The answer is, None. The reason is, the state of· Kansas itself incorporated the city of Zenda through a special agency of its own choosing, which it trusted. Not having specially appointed another agent to review the work of the first there is no review, and the judiciary can not interfere except on the familiar grounds bringing the case within the scope of their jurisdiction.

The defendants claim that the question of the validity or invalidity of the incorporation proceedings has become moot and consequently is not properly open to decision because of an act passed by the legislature of 1915, section 1 of which reads as follows:

"All cities of the third class which were incorporated or attempted to be incorporated and in which proceedings of incorporation an order of incorporation was

made by the board of county commissioners of the county in which said cities are located during the year 1913, are hereby declared to be duly and regularly incorporated and all proceedings in connection with such incorporation are hereby declared lawful and valid." (Laws 1915, ch. 153.)

The act is void as special legislation conferring corporate power. (Const., art. 12, § 1.) It is said that the act is curative in its nature and that curative acts are necessarily special. It does not, however, apply to all cities of the third class in the same situation. The arbitrary selection of those cities defectively organized in the single year 1913, and the disregard of those defectively organized in previous years and in the year 1914, is classification of the most capricious kind. It has no basis, depending on differences in situation or condition, on which to rest.

The judgment of the district court is reversed and the cause is remanded with direction to sustain the demurrer to the petition.