No. 31,079

The State of Kansas, ex rel. Roland Boynton, Attorney-general, *Plaintiff*, v. Niotaze Drainage District No. 1 in Chautauqua County, and J. S. Rinck, J. A. Henderson and George C. Dye, as Directors, etc., of said district, *Defendants*.

(34 P. 2d 124.)

Opinion filed July 7, 1934.

*Roland Boynton,* attorney-general, *Carl Ackarman,* of Sedan, *C. J. Putt,* of Topeka, and *O. P. May,* of Atchison, for the plaintiff.

*Kirke C. Veeder,* of Independence, and *J. W.. Dalton,* of Sedan, for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding to test the validity of the organization of the defendant drainage district, to oust it from performing any function of a public corporation, and to oust the individual defendants as directors of the district.

So far as is necessary to a disposal of the cause, the recitals of the petition are that the district was illegally organized in June, 1929, on a petition reciting the signers were taxpayers within the boundaries of the proposed district and that the lands therein were subject to damage from two named rivers, etc., and praying that a drainage district be organized as provided by chapter 215 of the Laws of 1905; that the promoters caused publication of notice which falsely and fraudulently stated that the petition for organization of the district contained the names of two-fifths of the taxpayers residing within the boundaries of the proposed district, when in truth and fact there were but three taxpayers residing within the boundaries of said proposed district, and that said publication notice stated the petition prayed for organization of said district under chapter 215 of the Laws of 1905, and amendments; that at the date of hearing on said petition defendant Henderson filed with the board of county commissioners a statement setting forth a purported list of resident taxpayers who resided in said district "or in Chautauqua county, Kansas"; that on June 12, 1929, the board of county commissioners entered an order falsely stating a petition had been filed and presented, signed by more than two-fifths of the resident taxpayers of said proposed district, asking that the district be organized,

and that said false statement in said order was obtained by the promoters of said district by false and fraudulent representations to said board. Copies of the petition, publication notice, list of resident taxpayers and of the order of the board of county commissioners creating the district are attached as exhibits to the petition in the instant case. It is also alleged that at the time of filing the petition for organization of the district, and ever since, there have been only three taxpayers residing within the boundaries of said district, and that the owners of three-fifths of the acreage within said district were nonresidents of said district, and there were not five taxpayers resident within said district so that such district could not be organized under the 1905 drainage act unless the petition be signed by not less than three-fifths of the persons who own and pay taxes on land situated within such territory, and said petition was not so signed. Other allegations of the petition need not now be noticed. The answer alleged due organization of the district, denied any fraud in its organization, alleged misjoinder of causes of action, and denied certain matters not important here.

A commissioner was appointed to hear the testimony and he has reported, making findings of fact, and concluding as a matter of law that plaintiff's petition should be sustained. The findings of, fact will not be fully set out, but will be mentioned where necessary.

It has been observed that the district in question was organized under the provisions of chapter 215 of the Laws of 1905, as amended, being R. S. 24-401 to 24-480, both inclusive, the amendments appearing in the 1933 supplement. Section 3 of the original act provides for the filing of a petition and specifies what it must contain. Section 4, which has never been amended, provides that the petition must be signed "by not less than two-fifths of the taxpayers residing within the boundaries of the proposed district."

In 1907 an act applicable to all drainage districts was passed, providing the phrase "taxpayer residing within the boundaries of any district or territory" shall be understood and construed to mean "any taxpayer of said district or territory living within the state of Kansas." (Laws 1907, ch. 198.) The act was amended in 1909, and, as amended, is R. S. 24-101. It was again amended by chapter 127 of the Laws of 1927 (R. S. 1930 Supp. 24-101), which was effective when the petition to create the district here concerned was filed. The effect of the amendment, so far as here important, was that the phrase was to be understood and construed to mean "any taxpayer

residing in the county in which the drainage district or territory is located."

The commissioner found that thirty-six individuals, exclusive of public utilities, owned lands within the district; that of the thirteen signers on the petition one owned no land in the district, two owned land in the district but resided out of the county, one is not accounted for, and that nine were "taxpayers residing within the boundaries of the proposed district" in contemplation of R. S. 24-404 and R. S. 1930 Supp. 24-101, and that the nine signers were less than two-fifths of the taxpayers residing within the boundaries of the proposed district. The defendant insists that in concluding as to the number of taxpayers, the commissioner included remainder-men in real estate, where the taxes were being paid by the holders of the life estate, and that such inclusion is erroneous.

We shall pass consideration of that question, and notice the contention of the plaintiff that the facts compelled the application of chapter 173 of the Laws 1911, which now appears as R. S. 24-458 to 24-461, both inclusive, parts of which have been amended (see R. S. 1933 Supp. 24-459, 24-459a), but which amendments do not affect the problem before us, and that the commissioner, although finding generally for the plaintiff, did not give proper force and effect to the above statute; that properly construed, the statute creates an exception to the general 1905 drainage act, and the failure of the petitions to disclose the facts making it applicable amounts to fraud. Section 3 of the act provides that it is supplemental to the 1905 drainage act (Laws 1905, ch. 215). Section 1 (R. S. 24-458) reads as follows:

"That whenever contiguous lands consisting of tracts owned in severalty by different owners shall be subject to injury from the overflow of any natural watercourse, and such land may as a body be protected from such overflow and injury by the construction of levees or other works, but the owners of three-fifths of the acreage of such body of lands are nonresidents and there shall not be five taxpayers resident within the territory including such lands, then such territory may be incorporated as a drainage district by the board of county commissioners upon the presentation of a petition as prescribed by section 3 of the act, to which this is supplemental, which petition shall be signed by not less than three-fifths of the persons who own and pay taxes on land situated within such territory, and shall state the above facts in addition to the facts required to be stated in the petition prescribed by said section 3."

The defendants' contention that the words "nonresidents" and "taxpayers resident within the territory," by reason of chapter 198

of the Laws of 1907 and chapter 130 of the Laws of 1909 (R. S. 24-101), should be construed to mean nonresidents of the county or taxpayers residing within the county, which construction our commissioner seems to have followed, cannot be upheld. The statutes last mentioned refer to the qualifications of signers of petitions and of voters. It would seem that it was intended that if the facts warranted, the 1911 act required a greater number of signers than was necessary under the general provisions of the 1905 act. From the fact that the 1911 act creates an exception, and that it was passed after the 1907 and 1909 acts were passed, providing that "resident taxpayers" and "taxpayers residing within the boundaries," etc., meant taxpayers living within the state of Kansas, it is evident that the expression "five taxpayers resident within the territory including such lands," had no reference to the signing of the petition, did not mean five taxpayers living any place in Kansas, but meant exactly what it said, and this is especially true in view of the later clause in section 1 which says "which petition shall be signed by not less than three-fifths of the persons who own and pay taxes on land situated within such territory." The 1927 amendment (Laws 1927, ch. 196, R. S. 1930 Supp. 24-101), changing statewide residence to county residence, cannot change the construction to be given R. S. 24-458. That the legislature in enacting section 1 of chapter 173 of the Laws of 1911 intended to restrict owners and taxpayers to actual residents within the limits of the proposed district, is evident also from the terms of section 2 of the act, which, although since amended (R. S. 1933 Supp. 24-459), has not been changed in the following parts:

"who own lands within said district, but need not be residents therein . . . every taxpayer of said district, owning real estate therein, whether a resident of such district or not, shall be entitled to vote," etc.,

for had chapter 198 of the Laws of 1907, as originally existing or thereafter amended, affected the matter the provisions above quoted would, to say the least, have been superfluous, if not, to a degree, contradictory. The commissioner's findings of fact are that there is a total of 2,066.68 acres within the boundaries of the district, and that at the time of filing of the petition for organization of the district three landowners owning a total of 704.7 acres within the boundaries of the district resided in the district. It thus appears that when the petition for the organization was filed there were less than five resident taxpayers, and more than three-fifths of the

acreage was owned by nonresidents. It follows that no district could be organized on a petition which did not disclose these facts; that the failure of the promoters to disclose them, even though made innocently or through advice that a different construction should be made of the statute applicable, amounted to constructive fraud; and that the order of the board of county commissioners, having been based on a fraudulent petition, and on findings not sufficient under the statute applicable, is without force and effect.

Defendants argue that by reason of the provisions of R. S. 24-406 it shall be the duty of the board of county commissioners to make a record showing all of its declarations, findings, decisions and orders defining the limits of the district,

"and all declarations, determinations, findings, decisions and orders of such board of county commissioners so entered of record shall be conclusive on all persons, so that no matter or fact so determined shall ever be disputed by anyone, and such record, or a properly authenticated copy thereof, shall be conclusive evidence in all courts of the matters therein recited and of the corporate existence of such drainage district:"

and under the decision in *State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 684, the state is precluded from questioning the validity of the proceedings except for fraud. It has been demonstrated that the district was formed on the basis of a petition, which misrepresented jurisdictional facts, and to which the board applied a wrong statutory test. Under the situation as it exists here, the determination of the board of county commissioners was not final, for either actual fraud, or what is here its equivalent, constructive fraud, has been made to appear.

Under the findings of the commissioner, the assessed value of all taxable property in the district for the year 1930 was $229,276, of which $54,760 was farm land and $855 was personal property, the balance of $173,661 being assessed value of properties belonging to public utilities. The values as of the date of the purported organization are not shown. While the proportion of values challenges attention, we need not determine whether organization of a district where there is such a disparity of valuations constitutes such arbitrary action and abuse of discretion as to be equivalent to fraud.

We notice that the boundaries of this district are so framed that while they include a strip of land approximately five and one-half miles long and less than a mile wide at its widest part, and while they describe as its south and west boundary the south and west

line of the Missouri Pacific Railroad Company's right of way, the north and east boundaries are the south and west banks of the Middle Caney and Little Caney rivers, except where they border about 160 acres of land lying south of the Middle Caney river, which lands, it is charged, were omitted on account of objections by the owners thereof; so far as the record shows, there is no watercourse included within the boundaries of the district. Query: Under the 1905 drainage act, is it possible to have a drainage district which does not include in its boundaries a natural watercourse?

We are of the opinion that the purported drainage district was not lawfully incorporated, and judgment of ouster against it is ordered. In so far as the individual defendants are concerned, their rights and duties as officers and directors are terminated with the ouster of the corporation.