Nos. 38,583 and 39,200

THE STATE OF KANSAS, on the Relation of FRED C. PREBLE, County Attorney of Reno County, Kansas, *Appellant,* v. THE CITY OF SOUTH HUTCHINSON, Reno County, Kansas; FRANK H. BANYARD, Mayor of said City; SI BONTRAGER, ROBERT A. WILBECK, ART B. DIRKS, C. W. HENSON, and T. J. McALISTER, Councilmen of said City; JOE E. GINGERICH, Treasurer of said City; GERALD COVERT, Clerk of said City; A. J. AHRENS, as County Clerk of Reno County, Kansas; ADELEE C. BYERS, as County Treasurer of Reno County, Kansas; the successors in office of said defendant officers, and the agents, servants, employees, attorneys and all persons acting in concert with any or all of the aforesaid defendants, *Appellees.*

(266 P. 2d 299)

Opinion filed January 23, 1954.

*Roy C. Davis,* of Hutchinson, Kansas, argued the cause, and *Fred C. Preble,* county attorney of Reno County, Kansas, was with him on the brief for the appellant.

*J. Richards Hunter,* of Hutchinson, Kansas, argued the cause, and *Walter F. Jones* and *Harry H. Dunn,* both of Hutchinson, Kansas, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: For present purposes it may be said that this was an action in quo warranto wherein the basic question was the validity of the incorporation of the city of South Hutchinson and of ordinances enlarging the limits of the city as originally incorporated.

The facts necessary for consideration to dispose of the appeals later mentioned are not in dispute. The record is replete with metes and bounds descriptions of tracts of real estate but except where

necessity compels otherwise we shall content ourselves with general references to sections or parts thereof or where additions can be identified by names, to references to such names. In conjunction with the abstracts, we are furnished with plats showing locations of the original town and additions thereto, but in no case does the record contain the wording of any dedicatory description and we therefore assume that each plat filed in the office of the register of deeds was sufficient in law, and that the plats furnished fairly disclose the lands described.

On May 31, 1886, a plat was filed of South Hutchinson covering generally the east half of the southeast quarter of section 23, the east half of the northeast quarter of section 26, the west half of the northwest quarter of section 25, and the southwest quarter of the southwest quarter of section 24. All of the lands above and hereafter described are in township 23 south and range 6 west in Reno County.

On December 1, 1886 a plat was filed of Puterbaugh's Addition covering generally the northwest quarter of the southwest quarter; and a small tract north thereof in section 24.

On December 31, 1886, a plat was filed of Blanchard's First Addition covering generally the east half of the northwest quarter of section 25 and the south half of the east half of the southwest quarter of section 24.

On an undisclosed date a petition for the incorporation of South Hutchinson was filed with the Board of County Commissioners. This petition cannot be found.

On January 6, 1887, the above petition was presented to the above Board and that Board made the following order:

"Whereas a petition was presented to the Board of County Commissioners of Reno County, Kansas, on the 6th day of January, 1887, signed by J. W. Hedrick and thirty-three other electors of the unincorporated village of South Hutchinson, praying that the following described territory be incorporated as a city of the third class under the name and style of South Hutchinson, to-wit:

"Beginning at center of Section Twenty-six (26) in Township Twenty-three (23) South in Range Six (6) West of Sixth Principal Meridian thence East three hundred and sixty (360) rods, thence North to the South Bank of the Arkansas River; Thence in a Northwesterly direction along the bank of said river to where the west line of the NW ¼ of Sec. Twenty-three, said town and range, intersects the bank of said River; thence South to the SW corner of the NW ¼ of Sec. Twenty-three (23), Town and Range aforesaid; Thence East One Hundred and Twenty (120) rods; Thence South One Hundred and Sixty (160) rods; Thence East Forty (40) rods; Thence South One Hundred and Sixty (160) rods to place of beginning.

"Therefore be it ordered by the said Board of County Commissioners of said Reno County in the State of Kansas, who being fully advised in the premises and finding that said petitioners have fully complied with the Laws of said State of Kansas providing for the organization of cities of the third class in said State—that said petition is reasonable, that a majority of the taxable inhabitants of said village are in favor of such incorporation; that the number of the inhabitants of said village exceed Two hundred and fifty (250); that said petition has been published in the form of printed notices, and that ten of said printed notices have been duly posted in conspicuous places in said village for three weeks before the hearing of this petition, there being no newspaper published in the said village. That said village be declared incorporated as a city of the third class by the name and style of 'The City of South Hutchinson' and that the metes and bounds are as above described. It is further ordered that an election be held on the 18th day of January A. D., 1887, at Paddocks Store in said city; that Henry Clive, J. C. Paddock and S. D. Bollard be appointed as judges and Stanley Hodgkinson and Armstrong as clerks of said Election and Samuel Elliott, James McFarland and V. Clive as a board of Canvassers of said Election returns."

For convenience, it is here stated that the south line of the lands in the original town plat coincides with a part of the south line of the above description and that generally the lands described in the order take in territory to the east, north and west of the original plat, including Blanchard's First Addition.

On March 24, 1887, four plats were filed: (1) a plat of Blanchard's Second Addition. It covers generally a portion of the northeast quarter of section 23; (2) Blanchard's Third Addition covering the west half of the southeast quarter of section 23 and the west half of the northeast quarter of section 26; (3) Blanchard's Fourth Addition covering the northeast quarter of the southeast quarter of section 26; and (4) Beam's Addition covering the northeast quarter of the northwest quarter of section 26.

On June 6, 1887, a plat of Parker's Addition was filed covering the most of the north half of the southwest quarter of section 25.

On June 14, 1887, a plat of Rock Island Addition was filed covering a part of the northeast quarter of the northeast quarter of the southwest quarter of section 23.

On December 15, 1888, a plat was filed of Pennsylvania Addition covering the south half of the southwest quarter of section 25. This addition is immediately south of Parker's Addition.

On May 27, 1889, plats were filed of Harris' Addition, Smith's Addition and Woodnutt's Addition. These cover lands south of the Arkansas River to the north and east of Puterbaugh's Addition and Blanchard's First Addition.

On November 11, 1887, and on February 28, 1888, the mayor and council of the city of South Hutchinson passed Ordinances No. 21 and 26 respectively attempting to extend the city limits, but as these ordinances concededly contained erroneous descriptions they will not be noticed further.

On February 21, 1889, the mayor and council of the city passed Ordinance No. 50, wherein the metes and bounds of the city were fixed as follows:

"SECTION 1. That the metes and bounds of the corporate limits of the city of South Hutchinson be and the same are hereby established as follows:— Commencing at a point where the south bank of the Great Arkansas River crosses the west line of Section Twenty-three (23) Township 23, Range Six (6) West of the sixth Principal Meridian in Reno County, State of Kansas, and running thence South on said west section line to the South west corner of the North west quarter of said Section 23, thence East 120 rods, thence South 160 rods, more or less, to the South line of said Section 23, thence west on said section line 40 rods, thence South 80 rods, thence East 80 rods more or less to the half section line of Section 26, Township and range aforesaid, thence south to the centre of said Section 26, being 80 rods, more or less, thence East on the half section line 80 rods; thence south 80 rods, thence East 80 rods to the East line of said Section 26, thence South on said line 80 rods to the southwest corner of Section 25, township and range aforesaid thence east on the South line of said Section 25 160 rods more or less to the half section line, thence north on the half section line 80 rods more or less to the north east corner of the south half of the southwest quarter of said Section 25, thence west on said north line of the South Half of the Southwest Quarter of said section 25 1000 feet more or less to the East line of Maple Street as shown in Parker's Addition to South Hutchinson, thence North on the East line of Maple Street to the South line of Forest Avenue as shown in said Parker's Addition, thence East on the south line of said Forest Avenue 1000 feet more or less to the west line of the North Half of the Southwest quarter of said Section 25, thence North on said west line to the center of said Section 25, thence East 40 rods, thence due north to the south bank of said Arkansas River, thence in a north-westerly direction along the Bank of said River to the place of beginning."

It was declared in the ordinance that the territory embraced in the foregoing metes and bounds shall be the city of South Hutchinson and subject to the laws governing cities of the third class "and of said city," and all ordinances in conflict were repealed. There has been no subsequent change in the boundaries and they were the boundaries at the time the instant action was filed. We deem it unnecessary to set forth dates when certain streets and alleys in some parts of the above described lands were vacated, but content ourselves by stating that by no statute, ordinance or order of the board of county commissioners were any of the additions or any part of

the city as originally incorporated, ever vacated. For purposes of information it may be said the boundaries include all of the lands as described in the order of the board of county commissioners incorporating the city of South Hutchinson, plus the lands in Beam's Addition, Blanchard's Fourth Addition, Parker's Addition and Pennsylvania Addition.

On October 26, 1946, this action was commenced by the state on the relation of the county attorney against the city of South Hutchinson, its mayor and councilmen, and the county clerk and county treasurer of Reno County, the petition alleging the status of the city as a city of the third class and of the officials above named, and that the city for a long number of years had purported to exercise its jurisdiction over and taxed property lying within the city; that the following described real estate (a metes and bounds description which covers all of the lands within the city limits lying in the north half of section 23 and the west halves of sections 23 and 26, and including all of Blanchard's Second Addition, Rock Island Addition and Beam's Addition) had never been platted into lots and blocks and dedicated as a part of the city by the owners thereof and was not developed as city property but is farm land except a portion used for industrial purposes; that no proceedings were had by the city or by the owners to annex the territory to the city except by the passing of certain purported ordinances, and except that Blanchard's Second Addition and Beam's Addition were at one time platted into lots and blocks, but that the property had long since been vacated, and that although the vacated property was at the extreme westerly limits of the city and not bounded on three sides by platted territory, notwithstanding the vacation, has continued to be taxed as a part of the city and the city has continued to exercise jurisdiction over the same. Similar allegations are made with respect to Blanchard's Fourth Addition and Pennsylvania Addition. (We note these additions corner each other but neither is contiguous to the lands first mentioned in the petition.) It is then alleged that the sole reason of the city for exercising jurisdiction over the territory as above described is by reason of Ordinances 21, 26 and 50 of the city attempting to define boundaries, and that at the time said lands were unplatted and undedicated, with stated exceptions, and that the city and county officers had continued to tax the lands in the same proportions as upon territory rightfully in the city; that the described territory is not a natural part of the city and derives

no benefit or advantage by reason of being treated and taxed as a part thereof. It was further alleged that at the time of the passage of the ordinances, the territory was not a part of the city, no action to annex was ever taken by the city by constitutional ordinance; that there was no law in effect authorizing a city to extend its boundaries to include additional territory of more than five acres not circumscribed by city limits; that the land attempted to be annexed was a tract of several hundred acres and was neither wholly or partially surrounded by corporate limits or platted territory, and the attempt to annex was ineffectual and void. It is then alleged that at the time of passage of the ordinances, Laws 1886, chapter 66, had not been amended or repealed and that that act nor any other statute authorized a city of the third class to extend its boundaries so as to bring within its corporate limits territory of the amount and character described by the sole expedient of passing an ordinance; that no petition for annexation had ever been presented to the board of county commissioners of Reno County, that the purported ordinances were without legal right or authority except possibly as to lands described in paragraph 9. This is a metes and bounds description of land which is without the city limits. It is further alleged that by reason of the above the city is without right to exercise municipal jurisdiction over the territory described, following which in paragraph 11 are allegations concerning an election to vote bonds for a waterworks system; that the bonds were voted; that a contract to sell them has been made; that the bonds will be issued; and other allegations leading to the conclusion the territory will be taxed if their issuance be not restrained. The prayer was that the attempted annexations be held ineffectual and void; that the city be ousted from exercising jurisdiction over the territory described; that the organization and extension of the city be determined and adjudicated; that the true boundary lines of the city be determined; and for an injunction restraining issuance and sale of the bonds, and upon the bearing on the events the injunction be made permanent, and for such relief as may be just, equitable and proper.

We find it unnecessary to refer to a series of motions as a result of which paragraph 11 was stricken. That resulted in appeal No. 38,583, which the appellant concedes should be and it is dismissed. All defendants other than the county officers filed a single answer. For convenience these answering defendants will be referred to hereafter as the city.

The answer was long, consuming fourteen pages of the abstract. In a very summary way we note it contained a general denial except as modified by admissions and explanations; set up a history of the organization of the city and of the annexations later made; admitted that certain streets and alleys were vacated and denied the additions were vacated; alleged that owners of a large part of the land described in the petition sought on occasions to have the city exclude the lands from the city and thereby recognized it was within the city; and after referring to some litigation by reason of which it is alleged the owners recognized integrity of the city boundaries, alleged that the city had complied with statutory requirements. Defendants prayed that plaintiff take nothing by its action and that the boundary as declared in Ordinance No. 50 be held and determined as the true boundary of the city and that all of the territory described in plaintiff's petition, except that in paragraph 9 of the petition, be held and determined to be within the city and subject to its jurisdiction and that defendants have judgment for their costs and such other relief as to the court seemed just and equitable.

The reply of plaintiff put in issue the new matter alleged in the answer.

After issues were joined, trial of the action was commenced before the Hon. F. B. Hettinger, judge; evidence was taken, the parties requested conclusions of fact and of law, but before decision the term of office of Judge Hettinger expired. Thereafter the parties joined in a stipulation that he be appointed as a referee for the purpose of making the conclusions so requested and such an order was made. Later the referee filed his report which included the facts set out heretofore and concluded as matters of law that the incorporation of the city was regular and complied with the law at the time and that the city became a *de jure* city of the third class; that the city duly passed its Ordinance No. 50 and thereby Beam's Addition, Blanchard's Fourth Addition, Parker's Addition, and Pennsylvania Addition were annexed to the city; that at that time the additions were subdivided into lots and blocks of less than five acres each and were contiguous to the original boundaries of the city; that the various vacations by act of the legislature or by resolution of the county commissioners did not by their terms exclude any of the tracts from the city limits and there never was any exclusion from the city limits by operation of law; that the city of South Hutchinson is properly exercising municipal authority over

the territory described in Ordinance No. 50 (describing it by metes and bounds as heretofore set forth), and that the prayer of plaintiff's petition should be denied. The plaintiff moved that the report be set aside; that it be referred to the referee for objections to conclusions and for other and more specific conclusions and for other and different conclusions contained in the motion. The defendants filed their motion that the report be confirmed.

On the report and the motions, the matter came on for hearing before the trial court. While some minor changes were made, the trial court found that judgment should be rendered for the defendant, and it rendered judgment denying the prayer of the petition, and adjudging that the city was a city *de jure* and that all of the lands described in plaintiff's petition, except that described in paragraph 9 thereof, were within the city and subject to its jurisdiction.

In due time the plaintiff perfected its appeal to this court where it specifies error in particulars which will be discussed to the extent necessary to dispose of the appeal.

As set forth in its brief, the state contends the order of the board of county commissioners of January 6, 1887, purporting to incorporate the village of South Hutchinson as a city of the third class is null and void for the following reasons: (1) The board abused its discretion by describing and purporting to incorporate a large territory of which the metes and bounds of the village was but a minor part; (2) the order did not set forth the metes and bounds of a "commons" nor find that a "commons" was no part of the village; (3) the board ignored the mandate of the statute that it must find the number of inhabitants was within the maximum limits required by law for the incorporation of a city of the third class; and (4) either the order was fatally defective in that it did not recite the substance of the petition or if it did then the petition was insufficient to confer jurisdiction.

It is not necessary that we set forth a detailed review of our statutes of territorial days and after statehood for the establishment of cities and classification thereof, nor that prior to 1869 there were no cities of the third class. Under the authority of the territorial General Statutes of 1855, chapter 155, section 1, and of the territorial Laws of 1859, chapter 80, section 1, towns and villages could be incorporated. Changes made by subsequent legislation need not be noted, other than that Laws of 1869, chapter 26, for the first time provided for cities of the third class and that by its terms changed all

incorporated towns having not more than two thousand people into cities of the third class.

There is no contention but that the order of the board of county commissioners of January 6, 1887, was made under the authority of Laws of 1886, chapter 66, section 2, the parentage of which is traceable to the territorial laws above noted. That section, which later appeared as G. S. 1889, section 923, reads as follows:

"SEC. 2. Whenever a petition, signed by a majority of the electors of any unincorporated town or village within the state, shall be presented to the board of county commissioners of the county in which such town or village is situated, setting forth the metes and bounds of their village and commons, and stating as near as may be the number of the inhabitants of such town or village, and praying that such town or village may be incorporated as a city, with satisfactory proof that such petition has been published in full in some newspaper printed in said town or village, at least once in each week for three consecutive weeks, and such board of county commissioners shall be satisfied that a majority of the taxable inhabitants of such town or village are in favor of such incorporation, and that the prayer of the petitioners is reasonable, and that the number of the inhabitants of such town or village exceeds two hundred and fifty and does not exceed two thousand, such board of county commissioners may, at any regular session thereof, by order, reciting the substance of such petition and the due publication thereof, and their finding that a majority of the taxable inhabitants of such town or village are in favor of such incorporation, and that the prayer of the petitioners is reasonable, and that the number of the inhabitants of such town or village is within the limits hereby required, declare such town or village incorporated as a city of the third class, by the name and style of 'The city of _____,' (naming it,) and designating in such order the metes and bounds thereof; and thenceforth the inhabitants within such bounds, and such further territory as from time to time may be lawfully added thereto, shall be a body politic and corporate by that name, and they and their successors (except such corporation be lawfully dissolved) shall have perpetual succession. The order so incorporating said city shall order the first election in said city for city officers, and shall designate the place where said election shall be held, and shall appoint three qualified electors of said city to act as judges of said election, and two other electors of said city to act as clerks of such election, and also three other electors of said city to act as a board of canvassers of such election returns; and said order shall forthwith be entered at length on the journal of the proceedings of said board of county commissioners, and shall also be published once in some newspaper printed in said city, at least one week before such city election: *Provided,* If no newspaper be published in said town or village, then ten printed notices shall be posted conspicuously in said town or village, in each instance where publication in a newspaper is required by the provisions of this section."

The state directs attention to the statutory requirement that the order of the board recite the substance of the petition for incorporation, and its argument swings around that requirement. Without stating

each particular phase of the argument, its gist is that the order makes no reference to any commons, and that there was included in the territory described in the order a very considerable body of un-platted lands. We need not devote any space to a discussion of the meaning of the word commons, for there is now no contention that any commons was included, and we place no weight whatever on the fact the board's order did not include a negative finding there was none. With reference to inclusion of unplatted lands, certain observations are in order.

One is that the petition cannot be found and therefore we have no way of knowing who the signers thereof may have been and for all that we know or the record discloses, every owner of un-platted lands was a signer of the petition asking that his lands be included. To say the least, after sixty-five years, neither the trial court nor this court would be warranted in making a contrary con-clusion.

Another is that the statute makes no requirement that the terri-tory in the proposed city be limited to platted lands, and this court has so held (*Levitt v. Wilson,* 72 Kan. 160, 83 Pac. 397).

Another is that statutes specifying the character or acreage of territory to be annexed to an incorporated city are not part or parcel of statutes authorizing incorporation. Under the circum-stances obtaining we hold that the order may not be said to be void by reason of the extent of territory included.

The state also contends that as the statute requires a finding that the *number of inhabitants exceeds 250 and does not exceed 2,000,* the order is void for the reason it does not state the number did not exceed 2,000. It is true there is no finding that the number did not exceed 2,000 inhabitants, but the board did expressly find the petitioners fully complied with the laws of the state of Kansas pro-viding for the organization of cities of the third class in the state. There was considerable evidence received as to the number of in-habitants in the territory incorporated as South Hutchinson, which showed that at no time has the population ever approached 2,000. The referee's finding was that at the time of incorporation the popu-lation exceeded 250 and was less than 2,000. We are of the opinion that under the reasoning in *The State, ex rel., v. City of Victoria,* 97 Kan. 638, 156 Pac. 705, where the precise question did not arise, but where others of greater import did, that it must be held the failure to include in the order the statement the population did not

exceed 2,000 was an irregularity and it may not be said the order was invalid on account of such failure.

The state also contends the board's order did not find that a majority of the taxable inhabitants were in favor of incorporation. Frankly we have some difficulty in following the argument, unless the state means that as only thirty-four persons signed the petition, there could not have been a majority of taxable inhabitants in favor of incorporation. The statute requires the petition to be signed by a majority of the "electors." The filing of the petition, under all of our decisions, invoked the jurisdiction of the board to consider it. Whether the petition was not sufficient because a majority of electors had not signed it was a question of fact for the board to determine, and the board by its order found the petition sufficient. The statute required that the board, when acting on the petition, be satisfied that a majority of the taxable inhabitants were in favor of the incorporation, and that it did.

In support of its contentions the state places its principal reliance on *The State v. Bilby*, 60 Kan. 130, 55 Pac. 843, where it was held essential to a valid order of the board of county commissioners incorporating a city of the third class that it show findings by the board that a majority of the taxable inhabitants of the town were in favor of incorporation; that the number of inhabitants exceeded 250 and did not exceed 2,000 and that the order designate the metes and bounds of the city as established by the board, and an order which did not contain any of those essentials was insufficient. In that opinion, to which reference is made, the order is set out in full. This court held that the board's finding the "petition reasonable and signed by a majority of the taxpayers" was not equivalent to a finding that a majority of the taxable inhabitants of the town were in favor of incorporation, and there was no finding as to population nor were the metes and bounds designated in the order. Judgment of ouster was entered. It is readily apparent that the instant order does not fail in any of the above particulars unless it be there was no specific finding the number of inhabitants was less than 2,000, and that we have heretofore held to be a mere irregularity and not fatal to validity of the order.

With reference to all matters concerned with the incorporation, it is noted that insofar as legislative aspects are concerned there was no provision for an appeal. Insofar as any judicial aspects, that could be appealed, were concerned there was no appeal, and the

only question now is, were the proceedings void. (See *Town of Olsburg v. Pottawatomie County*, 113 Kan. 501, 215 Pac. 451.) We note that the state directs attention to *State, ex rel., v. Niotaze Drainage Dist.*, 140 Kan. 1, 34 P. 2d 124, which was an original action in quo warranto to test the validity of the organization of a drainage district, in which the force of a statute, making certain actions of the board of county commissioners final and conclusive, was discussed and reference was made to *The State, ex rel., v. Holcomb*, 95 Kan. 660, 149 Pac. 684, as holding the state was precluded from questioning validity except as to fraud. It was there said the district was formed on the basis of a petition which misrepresented jurisdictional facts to which the board applied a wrong statutory test, and, under that situation the determination of the board was not final for either actual fraud, or its equivalent, constructive fraud had been made to appear. On that basis the state argues there was fraud in the instant incorporation. The petition, not being before us, is not open to examination, but that there was any fraud, actual or constructive, in the board's order of incorporation, does not appear. The fact that the state or the parties who owned affected land, may some sixty years after the event, conceive their lands were wrongfully included in the city's boundaries, does not make the order fraudulent.

In our opinion the proceedings for the incorporation of the city of South Hutchinson and the order of the board of county commissioners for incorporation were and are not void. The city of South Hutchinson was and is a city. *de jure.*

Under a separate heading the state contends the so-called boundary and extension of territory ordinances were unauthorized and void. Under this heading reference is made to so-called "disputed territory" referring apparently to the lands first described in the petition. Without repeating descriptions this "disputed territory" description includes lands which were a part of the entire territory embraced in the city as originally incorporated. The other territory referred to is that included in Beam's Addition, and possibly that in Blanchard's Fourth Addition, Parker's Addition and Pennsylvania Addition, all of which were added to the city by Ordinance No. 50 to which reference has been made. Although it is conceded that the territory in the several additions was platted, it is said that certain portions were vacated, and that the state's contention is that the *de facto* boundaries of South Hutchinson are limited to the

platted portion, not including the vacated portion. As we understand the state, it contends that South Hutchinson has only a *de facto* existence and its boundaries are limited by the portions that remain platted as of the time the action was filed and as of this day, and its argument swings around that premise. That premise is not sound. What has been said heretofore demonstrates that the order of the board of county commissioners of January 6, 1887, was valid and resulted in the creation of the city of South Hutchinson as a city of the third class, *de jure* and not simply *de facto,* with the territory included in the metes and bounds description of that order as its territorial content. We need not take up separately each of the several additions above mentioned, nor repeat the dates of their several dedications, nor that they were thereafter taken into the city by Ordinance No. 50, for, with an exception as to Beam's Addition later noted, the legal question as to validity of annexation is common to all. The state directs our attention to many of our statutory provisions as they exist today dealing with annexations to all classes of cities and the conditions precedent, especially as to unplatted lands. These statutes and conditions will not be noticed. Whether the annexations in question were valid depends on the statute in force at the time the several annexations were made. There is no question but that the statute in force was Laws 1886, chapter 66, section 4, later appearing as G. S. 1889, section 1018, which reads:

"That whenever the city council of any city of the third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of the city, present a petition to the board of commissioners of the county in which said city is situated, setting forth by metes and bounds the territory sought to be so added, and praying that such territory may be added thereto . . ."

then follow provisions for action on the petition; and

"*Provided,* That no such proceeding shall be necessary when the territory sought to be added is subdivided into lots or parcels of five acres or less, but in such cases the city council of said city shall have power to add such territory to said city by ordinance."

The above statute is clear. The record discloses that each of the several additions was platted into lots and blocks. As stated, we are not furnished with the plats, but the referee, who undoubtedly had them before him, found the lots and blocks were less than five acres each, the trial court approved, and under the statute the city was empowered to annex by ordinance and that it did. There is no

contention that the ordinance was not duly passed and published. Immediately after that was done, the additions became a part of the city. We have not overlooked *Stewart v. Adams,* 50 Kan. 560, 32 Pac. 122, of which the state quotes a part of the syllabus and the trial court's ruling as shown on page 564. A reference to that opinion will show that the ordinance there involved attempted to annex unplatted lands. The trial court had held the ordinance void and this court affirmed. If that case has any weight here, it is that by converse reasoning the ordinance would have been held good if the territory annexed were platted. In our opinion the ordinance of annexation was a lawful exercise of the city's power unless for reasons later discussed.

The state makes some contention that parts of the additions were vacated with the result the vacated portions were excluded from the city limits. The argument cannot be sustained. At the trial below the parties stipulated the records showed that the board of county commissioners on October 8, 1889, vacated all the streets and alleys in Beam's Addition. The referee found that those streets and alleys were vacated but nothing was mentioned about exclusion. The referee made similar findings about Pennsylvania Addition, and other streets and alleys in the originally incorporated territory. This finding has not been attacked in any manner. As bearing on the distinction between vacation and exclusion see *Beaty v. Shinkle,* 91 Kan. 102, 136 Pac. 928. In any event, we are not warranted in expanding the stipulation of the parties and the findings of the referee, approved by the trial court, into an exclusion of the territory from the city limits.

The state makes a further contention with respect to Beam's Addition. Before taking up the contention we repeat facts previously stated that the city of South Hutchinson was originally platted on January 6, 1887; that Beam's Addition was platted and dedicated on March 24, 1887; that it was annexed to the city by Ordinance No. 50 on February 21, 1889, and that the board of county commissioners vacated the streets and alleys in the addition by an order made October 8, 1889. In its contention the state points out only that the land in the addition was not a part of the original city and was not then platted; that it was vacated on October 8, 1889, and has always been used for agricultural purposes; that its brief existence as platted territory was on paper only and that Ordinance No. 50 purported to include the land within the city boundaries. Our

attention is directed to Laws 1893, chapter 66, section 1, which reads:

"SECTION 1. Where any town site, or portion of a town site, containing more than five acres, has been heretofore vacated by the board of county commissioners or by act of the legislature, and such town site, or a portion of a town site, is a part of a city of the first, second or third class, and included within the corporate limits of such municipal corporation, then, from and after the passage of this act, the town site, or portion of a town site containing more than five acres, thus vacated, shall no longer be a part of such municipal corporation, nor included in the corporate limits thereof."

And it is contended that by reason thereof, the lands in the addition were excluded from the corporate limits. In support our attention is directed to *Bull v. Kelley*, 83 Kan. 597, 112 Pac. 133. That case involved a vacation of lands included in the city of Cimarron. The legislature of 1889 passed an act entitled "An Act to vacate portions of certain town-sites in the State of Kansas therein named" later published as Laws of 1889, chapter 261. Under section 15 certain blocks in Cimarron were vacated and under section 67 all streets and alleys within the boundaries of the "hereinbefore designated town-sites declared vacated" were also vacated. The action was for an injunction against the collection of taxes on some of the vacated blocks claimed to be outside of the city. Although the reasoning is set out more fully in the opinion, to which reference is made, this court held:

"If the question were a new one, section 1 of chapter 66 of the Laws of 1893, as applied to the facts of this case, would doubtless be held to confer corporate power by special act and consequently to be unconstitutional. Since, however, the section was held to be constitutional in 1899 in the case of *Allen v. Town Co.*, 60 Kan. 857, affirming *Town Co. v. City of Smith Center*, 6 Kan. App. 252, the doctrine of *stare decisis* applies and the former decision will not be disturbed." (Syl. ¶ 2.)

The state's argument is that although the above case dealt with a vacation of the legislature, here there had been a vacation by the board of county commissioners and that the reasoning of the Bull case should control. We shall not pause to debate whether the doctrine of *stare decisis* was properly applied in the Bull case, or whether in any event, any analogies should be drawn from that case. It is not contended there was ever any vacation by the legislature of any part of Beam's Addition, the order of the board of county commissioners did not do more than vacate streets and alleys, no lots and blocks were vacated, nor was there any attempt to vacate the addition. A careful reading of the Bull case and the

statutes mentioned in it discloses a situation different from that now before us, and that case does not control here. In any event the provisions of Laws 1893, chapter 66, do not cover the facts in the instant case. Under that act it may not be said that Beam's Addition was and is no longer a part of the city of South Hutchinson.

In view of our conclusions above stated, it is unnecessary to discuss contentions made by the state and answered by the city as to whether the city has only a *de facto* existence, whether as a question of fact and of law there can be acquiescence by the state and estoppel to assert ouster. We note also some complaint that certain findings should be set aside and others substituted, but a careful examination of the record discloses that the conclusions of fact made by the referee and approved by the trial court are amply sustained by the evidence, concerning which, in view of our decision thereon, there is little or no dispute.

We conclude that the trial court did not err in its judgment and that it should be and is affirmed.